[No. 43482.    En Banc.    May 15, 1975.]

JAMES M. GAYLORD, *Appellant*, v. TACOMA SCHOOL DISTRICT No. 10 *et al*, *Respondents*.

*Christopher E. Young* and *William R. Creech* (of *Peterson, Bracelin, Creech & Young*), for appellant.

*Ronald L. Hendry, Prosecuting Attorney,* and *Richard A. Monaghan* and *Philip Brandt, Deputies,* for respondents.

UTTER, J.—James Gaylord was dismissed from his position as a teacher in Tacoma School District No. 10 when the district learned he was a homosexual. He appealed the district's action to superior court pursuant to RCW 28A.58.480, and also filed a complaint for damages and reinstatement. The court upheld the action of the school district and declined to reinstate him. He appeals.

One of the pivotal issues at the trial of this case was whether appellant was discharged for "sufficient cause" pursuant to RCW 28A.58.100, which provides in part: "Every board of directors, unless otherwise specially provided by law, shall: (1) Employ for not more than one year, and for sufficient cause discharge all certificated and noncertificated employees . . ." The term "sufficient cause" was early defined as conduct which would affect the teacher's efficiency. *Browne v. Gear,* 21 Wash. 147, 57 P. 359 (1899); *Denton v. South Kitsap School Dist. 402,* 10 Wn. App. 69, 516 P.2d 1080 (1973).

Mr. Gaylord contends he was an excellent teacher up until the day he was discharged despite the alleged public knowledge of his status as a homosexual. He stresses the trial court's finding of fact that "There is no allegation or evidence that James Gaylord has ever committed any overt acts of homosexuality. The sole basis for his discharge is James Gaylord's status as a homosexual." He argues to this court that expert testimony showed overwhelmingly that, even if knowledge of his status as a homosexual became public, he would be able to function efficiently as a teacher without risk of harm to the school or to the pupils. The school district, on the other hand, presented testimony at trial by its administrative staff that when knowledge of appellant's status as a homosexual became known to the students and their parents, the resulting complaints would

affect appellant's teaching efficiency and injure the school.

This crucial question of fact was resolved in favor of the school district by the trial judge. He found the public knowledge of Gaylord's status would "impair the optimum learning atmosphere in the classroom." This finding, however, was based on conclusion of law No 3, in which the judge held he had to give special emphasis to the school administrators' testimony inasmuch as "[p]ursuant to RCW 28A.58.1011, this court is required to give the highest consideration to the judgment of the qualified, certified educators regarding conditions necessary to maintain the optimum learning atmosphere." The court's oral opinion reflects the significance of this holding: "In the court's opinion under the evidence, and taking the evidence of the people who have to live with this, who seek under the statute to create the optimum learning atmosphere, the Court is going to rule for the Respondent. I feel I have no choice. I can say this, that I expect and I hope that this matter is taken further and that we have a clarification under our own state law on this one question. I don't think it's open and shut, and I think this would be a good vehicle for having that question tested."

█ █ The burden of proof in this case should be placed upon the district. Its decision to discharge must be based "solely upon the cause or causes for discharge specified in the notice of probable cause . . . and established by a preponderance of evidence at the hearing . . ." RCW 28A.58.450. The interpretation of RCW 28A.58.101(1) made by the trial court would lessen the burden of proof required of the district by law. The language of RCW 28A.58.101(1) does not support the interpretation urged by respondent and made by the trial court. RCW 28A.58.101 provides:

> Every board of directors, unless otherwise specifically provided by law, shall:
> (1) Enforce the rules and regulations prescribed by the superintendent of public instruction and the state board of education for the government of schools, pupils, and certificated employees.

(2) Adopt and make available to each pupil and parent in the district reasonable written rules and regulations regarding pupil conduct, discipline, and rights. Such rules and regulations shall not be inconsistent with law or the rules and regulations of the superintendent of public instruction or the state board of education and shall include such substantive and procedural due process guarantees as prescribed by the state board of education . . .

(3) Suspend, expel, or discipline pupils in accordance with RCW 28A.04.132.

RCW 28A.58.1011 in turn provides:

The rules adopted pursuant to RCW 28A.58.101 shall be interpreted to insure that the optimum learning atmosphere of the classroom is maintained, and that the highest consideration is given to the judgment of qualified certificated educators regarding conditions necessary to maintain the optimum learning atmosphere.

By its own terms RCW 28A.58.1011 only applies to those situations where rules are *adopted* pursuant to RCW 28A.58.101. The only portion of the latter statute requiring *adoption* of rules is subsection (2), relating to pupil conduct, discipline and rights. Subsection (1), regarding rules and regulations governing certificated employees, deals with the enforcement of those rules and regulations enacted by the Superintendent of Public Instruction. The rules dealing with certificated personnel, such as appellant, are not adopted pursuant to RCW 28A.58.101, and the trial court's application of the mandate of RCW 28A.58.101 regarding weight to be given the testimony of qualified certificated educators was therefore inappropriate.

This case is remanded to the trial court to enter findings of fact based upon the application of the proper statutory burden of proof of the district.

WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.

STAFFORD, C.J. (concurring specially)—The trial court's finding that the teacher's status would "impair the optimum learning atmosphere in the classroom" is basic to an

affirmance of the district's action. The finding is necessary for a determination of the issue on appeal as well. In resolving the factual dispute that gave rise to this critical finding, the trial court relied on RCW 28A.58.1011 and gave added weight to the school administrators' testimony. As the majority points out, the trial court misinterpreted the requirements of RCW 28A.58.1011.

The weight to be attached to the testimony of witnesses is a judgmental matter peculiarly within the province of the trier of fact. Such judgmental process is neither changed nor controlled by RCW 28A.58.1011. In the final analysis, the district must establish its case by a preponderance of the evidence. RCW 28A.58.450. Whether the trial court will reach the same or a contrary result, after an unfettered evaluation of the testimony, remains to be seen.

Without question, there are other matters of considerable interest that await eventual resolution. I note the desire of the dissent to meet them now. But, the nature of the potential issues involved and the manner of their presentation can be considered in a proper light only after the trial court has reevaluated the testimony and entered its findings of fact. An attempt to resolve these tempting potential issues before the trial court has fulfilled its duty will short-circuit the judicial process.

The cause should be remanded for reconsideration of the testimony of the several witnesses after properly weighing it, unfettered by RCW 28A.58.1011. The trial court should thereafter enter findings of fact based upon the burden of proof required by RCW 28A.58.450.

FINLEY, WRIGHT, and HOROWITZ, JJ., concur with STAFFORD, C.J.

RINGOLD, J.* (concurring in part and dissenting in part)—I agree that RCW 28A.58.1011 was misinterpreted by the trial court.

---

*Justice Ringold is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

I disagree with the majority as to the nature of the remand.

James Gaylord attended the University of Washington on a scholarship and was named "outstanding senior" in the political science department. He graduated in 1956 with a Phi Beta Kappa award. He began teaching at Wilson High School in Tacoma in 1960. In the academic year 1967-68, while on a sabbatical leave, he returned to the University of Washington and earned a master's degree in librarianship.

By letter dated November 21, 1972, he was notified that probable cause for his discharge had been found by the Board of Directors of the school district, the letter in part stating as follows:

The specific probable cause for your discharge is that you have admitted occupying a public status that is incompatible with the conduct required of teachers in this district. Specifically, that you have admitted being a publicly known homosexual.

The plaintiff requested a hearing before the Board of Directors which was held on December 19, 1972. The board made the following findings and conclusions:

I.

That James E. Gaylord is a teacher in Tacoma School District No. 10, and has been for a number of years.

II.

That James E. Gaylord, by stipulation of his counsel and by his own admission is a homosexual.

III.

That James E. Gaylord made contact with and imparted information as to his homosexuality to one Frank Rivers, a resident of Tacoma, Pierce County, Washington.

IV.

That knowledge of Mr. Gaylord's homosexual condition was obtained by one Kim Balcom, a student in the Tacoma School District No. 10.

V.

That therefore James E. Gaylord has made knowledge of his homosexuality public.

From the Findings set forth above, the Board has made the following conclusions:

I.

That the Board has jurisdiction of the subject matter of the hearing and of the person of James E. Gaylord.

II.

That being a publicly known homosexual is a (sic) moral conduct constituting just cause for dismissal as a teacher from Tacoma School District No. 10.

III.

That James E. Gaylord should be dismissed as a teacher from Tacoma School District No. 10.

Therefore, it is the decision of the undersigned members of the Board of Directors of Tacoma School District No. 10 that James E. Gaylord should be and hereby is, discharged from his duties as a teacher of Tacoma School District No. 10 effective with the close of business December 21, 1972.

As required by state law, the defendant board had adopted written policies for discharge. It was stipulated that the plaintiff was discharged under policy 4119 reading in part:

The Board of Education considers the following as justifiable causes for release or dismissal of school employees . . . (5) immorality . . .

The plaintiff appealed to the Superior Court, pursuant to RCW 28A.88.015 for a trial de novo.

After 3 days of trial, the trial court entered its findings of fact:

I.

James Gaylord was a teacher at Wilson High School in Tacoma School District No. 10 for twelve full years, and for part of a thirteenth year up to December 21, 1972.

II.

During his entire teaching career at Wilson High School James Gaylord received excellent evaluations.

III.

On October 24, 1972 a statement was prepared by one Kim Balcolm, a former student at Wilson High School, and was given to Wilson High School officials. This statement indicated that Kim Balcolm believed James Gaylord to be homosexual. On the same date this letter was shown to James Gaylord by Wilson High School Vice-Principal, Jack Beer, and James Gaylord stated to Jack

Beer that he was homosexual, and that "he had come out of the closet". On November 21, 1972, James Gaylord was notified by letter that the Board of Directors of Tacoma School District No. 10 had found probable cause for his discharge from his duties as a teacher on the basis that he occupied a public status that was incompatible with the conduct required of teachers in Tacoma, specifically the status of being a publicly known homosexual.

### IV.

On December 21, 1972, a hearing was held before three members of the Tacoma School District No. 10 Board of Directors, and said Board voted to discharge James Gaylord.

### V.

There is no allegation or evidence that James Gaylord has ever committed any overt acts of homosexuality. The sole basis for his discharge is James Gaylord's status as a homosexual.

### VI.

Jack Beer, Wilson High School Vice-Principal, Maynard Ponko, Wilson High School Principal, and Trygve Blix, former Tacoma School District personnel director, all testified that in their opinion, the knowledge of James Gaylord's homosexuality would cause some students, teachers, and parents to object to James Gaylord's continued presence in the classroom, and that these types of objections would impair said administrators' ability to administer the school and would therefore damage the educational process.

### VII.

Drs. S. Harvard Kauffman and Jerman Rose, psychiatrists specializing in child and adolescent psychiatry, testified that in their opinion James Gaylord's presence in the classroom did not pose any threat of harm to the personal or educational development of the students at Wilson High School, and that in their opinion James Gaylord would be able to function well as a teacher even if his students had knowledge of his homosexuality. Both doctors testified that some students and parents might object to James Gaylord's continued presence in the classroom. Both doctors also testified that homosexuality is acquired, not inherited, and that, while a student's sexual orientation was probably fixed by the time he got to high school, he still had a choice as to his behavior. Dr. Kauffman testified that homosexuality is a deviation and

a disease and that if a homosexual wanted to change his behavior a psychiatrist would attempt to help him do so. Mr. Gaylord testified that he has known he was homosexual for the last 20 years and has not sought treatment because he did not regard it as a problem.

VIII.

Dr. Stephen Sulzbacher, an educational psychologist from the University of Washington, testified that he had consulted with virtually every school district in Western Washington, was personally aware of the professional competence of homosexuals teaching in said public schools, and that, in his opinion, James Gaylord would be able to continue teaching effectively in the classroom, even if students, teachers and parents knew of his homosexuality. Dr. Sulzbacher also testified that none of the homosexuals of whom he was aware had taken a public stance as such, or informed their administrations of their sexual orientation. He also testified that parents can have a decided effect on school boards, on students, and on the educational process, and that some parents would be dissatisfied with the retention of an admitted homosexual and that their dissatisfaction would find its way to the classroom.

IX.

The testimony of James Gaylord, former students and fellow teachers is undisputed that James Gaylord has taught elective courses at Wilson High School and that no student would be required to take a course from James Gaylord if he or she did not want James Gaylord as a teacher. It was the testimony of the administration that, in their opinion, some students would take courses from Mr. Gaylord out of curiosity as to his sexual orientation, and that others would take courses because of it.

The court then made the following:

CONCLUSIONS OF LAW

I.

This court has jurisdiction over the subject matter of this appeal.

II.

R.C.W. 28A.58.101 charges the Board of Directors of Tacoma School District No. 10 with enforcing certain rules and regulations, and R.C.W. 28A.58.1011 provides that these rules "shall be interpreted to ensure that the optimum learning atmosphere of the classroom is main-

tained, and that the highest consideration is given to the judgment of qualified, certified [sic] educations [sic] regarding conditions necessary to maintain the optimum learning atmosphere."

III.

Pursuant to R.C.W. 28A.58.1011, this court is required to give the highest consideration to the judgment of the qualified, certified educators regarding conditions necessary to maintain the optimum learning atmosphere.

IV.

A teacher may be discharged where his conduct or status would impair the optimum learning atmosphere in a school district.

V.

James Gaylord's status as a homosexual became publicly know prior to the time, according to the undisputed testimony of Kim Balcolm, that Mr. Balcolm was told by a casual acquaintance he met on the street that Mr. Gaylord was a person at Wilson High School with whom matters of homosexuality could be discussed.

VI.

This public knowledge of James Gaylord's status as homosexual would impair the optimum atmosphere in the classroom and is cause for dismissal under R.C.W. 28A.58.450.

VII.

The discharge of James Gaylord on the basis of his status as homosexual, was proper, notwithstanding the fact that homosexuality was not a basis for discharge as set forth in School District Policy 4119 covering discharge. Tacoma School District Policy No. 4119 adopted pursuant to R.C.W. 28A.58.450, under which the appellant was discharged, is not unconstitutionally void for vagueness because of a failure to specify homosexuality as a basis for discharge.

VIII.

A rational nexus between Mr. Gaylord's status as a publicly known homosexual and his job was established by the testimony of the administrators of School District No. 10 that this fact would impair the educational process.

IX.

Discharging James Gaylord from his teaching position solely on the basis of his status as a publicly known homosexual is not unconstitutional and does not violate

the equal protection clauses of the Fifth and Fourteenth Amendments of the United States Constitution, or Article 1, Section 12 of the Constitution of the State of Washington.

### X.

Discharging James Gaylord from his teaching position solely on the basis of his status as a publicly known homosexual is not unconstitutional and does not violate his right to privacy guaranteed by the First through Tenth Amendments to the United States Constitution or Article 1, Section 7 of the Constitution of the State of Washington, because he forfeited his right to privacy by making his status known to Frank Rivers and Tom Hartwick and through them, to Kim Balcolm and directly to Jack Beer.

### XI.

Discharging James Gaylord from his teaching position solely on the basis of his status as a publicly known homosexual does not violate his contract with the Tacoma School District No. 10, and does not violate any rights guaranteed to James Gaylord by the statutes of the State of Washington.

The assignments of error are directed solely to the entry of conclusions of law Nos. 2 through 11.

A teacher may be discharged only for "sufficient cause" and the burden of proof is upon the district to establish cause for discharge. The majority has concluded that the conclusions of law are not supported by the findings of fact. No useful purpose would be served by sending the case back to the trial court for additional findings or evaluation. There are no other relevant facts which can be found.

It is the obligation of this court to arrive at the appropriate conclusions of law which flow from the findings of fact.

The allegations of "immorality" as sufficient cause for discharge were not maintained at the trial and not seriously argued in this court. The substance of defendant's argument interpreted most strongly in the school board's favor is that:

1. Plaintiff was not discharged for "immorality" per se;

2. Plaintiff was discharged for a "status," and the improper conduct in making "known" his status.

The trial court's decision is grounded in the misapplication of RCW 28A.58.1011, which leads him to conclusion of law No. 6:

This public knowledge of James Gaylord's status as homosexual would impair the optimum atmosphere in the classroom and is cause for dismissal under R.C.W. 28A.58.450.

As noted by the majority, the "decision to discharge must be based 'solely upon the cause or causes specified in the notice of probable cause . . . and established by a preponderance of evidence at the hearing . . .' RCW 28A. 58.450."

The trial court did not sustain the cause of discharge to be "immorality." "Sufficient cause" for discharge, as determined by the trial court is predicated solely on conclusion of law No. 4:

A teacher may be discharged where his conduct or status would impair the optimum learning atmosphere in a school district.

Though the trial must be de novo, the statute mandates a reversal. The discharge was based upon a cause not specified in the letter of November 21, 1972, and defined by the stipulation of the parties as coming within policy 4119 "(5) immorality."

In view of the majority's disposition of this matter, we must inquire whether a new determination by the trial court that the plaintiff's discharge may be sustained upon the basis that his status "would 'impair the optimum learning atmosphere in the classroom,' " constitutes legally sufficient cause.

The only requirement that an "optimum learning atmosphere" shall be maintained is found in RCW 28A.58.1011. We have concluded that the trial court was in error in its application of the statute.

RCW 28A.58.1011 by its terms does not purport to establish cause for teacher discipline. It does not apply to proceedings to discharge a teacher. It cannot be read into RCW 28A.58.450.

The early case of *Browne v. Gear,* 21 Wash. 147, 151-52, 57 P. 359 (1899), defined sufficient cause as follows:

Such cause, in the absence of a definition in the statute, would seem to be such misconduct relating to her duties as a common school teacher as would justify the revocation of her right to teach; that is, either such incompetency in her vocation in and about the school as made her unfit for the station, or violations of rules in teaching, etc., or such moral turpitude outside her profession as would recoil on her efficiency in her work and injure the school.

*Wojt v. Chimacum School Dist. 49,* 9 Wn. App. 857, 862, 516 P.2d 1099 (1973), points out that RCW 28A.67.065, requires every school board to establish evaluative criteria and procedures and:

Where a teacher is discharged because of classroom deficiencies, the consequences are severe. Chances of other employment in the profession are diminished, if not eliminated. Much time, effort, and money has been expended by the teacher in obtaining the requisite credentials. It would be manifestly unfair to allow a discharge for a teaching or classroom deficiency which is reasonably correctable. In our view, the legislative purpose of RCW 28A.67.065 was to prevent such injustice from occurring.

*Wojt* reemphasizes the requirement that sufficient cause for discharge must be based on *conduct* of the teacher which has adverse effects upon the "teacher's fitness to teach."

*Denton v. South Kitsap School Dist. 402,* 10 Wn. App. 69, 516 P.2d 1080 (1973), which is unique, does not alter *Wojt's* requirement that sufficient cause for discharge be based on conduct of the teacher affecting adversely his fitness to teach.[1]

Even if it were determined that the statute intended to

---

[1]The evidence does not go beyond a conclusion that in the opinion of some school administrators the optimum learning atmosphere would be impaired. The prediction of a future event, which might not take place cannot constitute "conduct adversely affecting the teacher's classroom performance" which would be the basis for discharge.

establish a cause for discharge, it would not meet the constitutional due process test of specificity.

The adjective "optimum" is defined as "best or most favorable." *Webster's New Twentieth Century Dictionary* (1964) and *Random House Dictionary of the English Language* (1966). The precatory language of RCW 28A.58.1011 is no more than a well-intentioned legislative statement of the laudatory but seldom attainable goal. The desire to maintain the best learning atmosphere possible is not a sufficiently definite standard to deprive a teacher of his right to continue teaching. As applied in this case, RCW 28A.58.1011 must fail as "void for vagueness" under the due process clause of the fourteenth amendment to the United States Constitution, and article 1, section 3 of the Washington State Constitution. *Cramp v. Board of Public Instruction*, 368 U.S. 278, 7 L. Ed. 2d 285, 82 S. Ct. 275 (1961); *Baggett v. Bullitt*, 377 U.S. 360, 12 L. Ed. 2d 377, 84 S. Ct. 1316, (1963); *Seattle v. Drew*, 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967).

There is no evidence nor findings of fact which can sustain the burden of proof necessary to establish sufficient cause for discharge. The matter should be remanded to the trial court with instructions to reinstate the appellant in his position and to determine the other issues raised by the complaint.

HUNTER, J. (dissenting)—The majority has remanded this case to the trial court for a reevaluation of the testimony upon the theory that giving the highest consideration to the judgment of qualified certificated educators regarding conditions necessary to maintain the optimum learning atmosphere, as required by RCW 28A.58.1011, does not apply unless it relates to a rule adopted by the board of directors regarding pupil conduct; that a teacher who admits being a homosexual does not violate a rule regarding pupil conduct. Hence the above statutory requirement as to the weight to be given to the judgment of qualified educators, as exercised in this case, does not apply. I disagree.

This is reading RCW 28A.58.1011 out of context and disregards the entire purpose of the statute. The plain language of the statute does not limit the *conditions necessary* to maintain the optimum learning of the classroom to pupil conduct. It is clear that the manifest purpose of the statutory mandate is to maintain an optimum learning atmosphere in the classroom—and to say this must be limited to the conduct of pupils and that it does not apply to that of a teacher, strains logic and credulity. Implicitly, it was the intention of the legislature to protect the optimum learning atmosphere in the classroom from subversion whether it be by a teacher's conduct, by his example or otherwise or by the conduct of the pupils.

In this case the principal, the assistant principal, and the former assistant superintendent of personnel were unanimous in their opinion that a teacher holding himself out as a homosexual would be damaging to the optimum learning atmosphere of the classroom.

Mr. John Beer, assistant principal at Woodrow Wilson High School, testified as follows:

A. I feel that homosexuality is out of place in a public school classroom. I feel that a student from his initial years as a six-year-old until he graduates from a high school, at about 17 years, is going through his formative stages, and that a teacher, as well as a home or a church, but certainly a teacher is extremely instrumental in influencing a child in these developmental years. And I feel that consciously or unconsciously a teacher that is homosexual can do irrepairable damage in these formative years. . . . If a homosexual were on our faculty, a known homosexual on our faculty, No. 1, as an Assistant Principal I would have to defend his remaining there to other members of the staff. . . . It would be an extremely disruptive type of thing to have a homosexual serving as a staff member. . . . Well, I have already operated under the assumption that homosexuality is an abnormality and would be classified as immoral, and as such I don't believe that a homosexual meets the standards, the professional standards, the community standards, that we would expect of a classroom teacher.

High School Principal, Maynard Ponko, testified as follows:

A. . . . I feel that I know had I not taken action within the semester, the quarter, that we would have had students come up and object and not to—because they did not want to be put in his class. I had one, in particular, and he was rather violent about it. And I also feel a responsibility to the whole community and our school and feel this is not the place for a homosexual, a known homosexual, to be working. Q. What, if any, effect would this have on the faculty? A. It would form isolations. Q. Would you further amplify "isolations." I don't understand the term. A. Well, it had already started. Ridicule, disgust, contempt, for our housing the situation, and why don't we move faster? Doesn't the School Board have a right to move?

Mr. Trygve Blix, recently retired Assistant Superintendent of Personnel, Tacoma Schools, testified as follows:

A. . . . I think there is a way of life that I have looked for in employing teachers through the years, and fundamentally I don't think that homosexuality is a way of life that I can tolerate in my position. . . . I've worked with adolescents a long time and adolescents do admire adults, and adolescents also sometimes admire things that I don't think society accepts, as a whole. We have all seen a lot of that and I think that could be, if the word was out that there was a homosexual teaching, that youngsters even with those tendencies could well accept them and say, this person is a fine man, he's a homosexual, I can't see what's wrong with it . . . I think . . . that we've got to teach by examples as well as by discipline.

The foregoing testimony of qualified certificated educators clearly supports the trial court's conclusion that the school board acted properly in dismissing the appellant from the Tacoma school system. The trial court was fully justified in carrying out the purpose and intent of the statute, RCW 28A.58.1011, by giving the highest consideration to the testimony of these qualified certificated educators to insure that conditions necessary for the optimum learning atmosphere of the classroom are maintained.

To send this case back to the trial court can serve no

364

useful purpose and will only cause undue delay in the final disposition of the case.

The trial court should be affirmed.

HAMILTON, J., concurs with HUNTER, J.

Petition for rehearing denied August 12, 1975.