23 Wn. App. 650 (1979)
597 P.2d 1376
CHARLES M. HOAGLAND, Appellant,
v.
MOUNT VERNON SCHOOL DISTRICT NO. 320, ET AL, Respondents.
No. 5622-1.
The Court of Appeals of Washington, Division One.
July 9, 1979.
Mitchell Cogdill, Kent Millikan, and Cogdill, Deno & Millikan, for appellant.
Steven S. Bell, John H. Binns, Jr., and Perkins, Coie, Stone, Olsen & Williams, for respondents.
RINGOLD, J.
The plaintiff, Charles Hoagland, a Mount Vernon schoolteacher, was convicted on March 17, 1976, of grand larceny by possession on the basis of his purchase of a stolen motorcycle from a former student. Pursuant to the *652 statutes then relevant[1] the Board of Directors of the Mount Vernon School District (Board), reciting the underlying facts and the conviction, notified Hoagland that it had concluded there was probable cause for his discharge. He was further suspended from teaching.
Pursuant to RCW 28A.58.515[2] Hoagland elected to appeal directly to the Superior Court instead of requesting a hearing before the Board. The Board moved for summary judgment, dismissing Hoagland's appeal to the Superior Court, and Hoagland moved for summary judgment seeking reinstatement from suspension of his employment pending *653 the final hearing in this matter. After argument, the trial court took the case under advisement and issued a memorandum opinion granting the Board's motion. The trial court summarized the facts, stated the issue to be "whether a teacher's conviction of the crime of grand larceny by possession, a felony, constitutes `sufficient cause' for his discharge," and announced its decision:
This court finds that the Board of Directors of defendant district had sufficient cause to discharge plaintiff teacher under the agreed facts of this case. Plaintiff's felony conviction is inherently harmful to the teacher-student relation, and therefore harmful to the school district, and plaintiff's continued presence in the classroom would adversely affect the educational process of the district.
The trial court subsequently entered its order effectuating its decision and Hoagland appeals.
We reverse.

PROPRIETY OF SUMMARY JUDGMENT PROCEDURE
[1] Hoagland first challenges the applicability of the summary judgment procedure to this action. Other than providing that a transcript of the Board's action be filed with the court, the statutes governing de novo hearings in superior court did not establish any rules or procedures for the court. CR 81 provides in material part: "Except where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings...." "Special proceedings" are not defined in the Superior Court Civil Rules. The generally accepted reference to special proceedings concerns attachment, certiorari, mandamus, prohibition and others incorporated under RCW Title 7. There are no special rules or procedures governing trials de novo under RCW 28A.58.480 which would be inconsistent with the applicability of summary judgment procedure to the case at bench.
The trial court did not err in applying the summary judgment rule CR 56 to this proceeding.

*654 SUFFICIENT CAUSE FOR DISCHARGE
[2] The decision to discharge a teacher must be based "solely upon the cause or causes for discharge specified in the notice of probable cause ... and established by a preponderance of the evidence at the hearing". RCW 28A.58.450. The trial court granted the Board's motion for summary judgment despite the fact that the Board itself had made no finding or expressed any opinion as to whether the facts underlying Hoagland's prosecution were true or the conviction itself would constitute sufficient cause. The Board's decision finding "probable cause for discharge" was an ex parte preliminary decision initiating the discharge procedure and can form no basis for the court's independent determination of sufficient cause. Nor can the Board's actions be the basis for the findings of fact made by the court which are disputed. RCW 28A.58.450.
The parties dispute what issue was decided by the trial court. Hoagland asserts that the court decided that the conviction of a felony as a matter of law constitutes sufficient cause for discharge; the Board states that the trial court ruled Hoagland's conduct, upon which the conviction was based, constituted sufficient cause. The trial court framed the issue as "whether a teacher's conviction of ... grand larceny by possession, a felony, constitutes `sufficient cause' for his discharge." We view the issue then, as suggested by Hoagland, to be whether as a matter of law the conviction of a felony constitutes sufficient cause to discharge a teacher.
[3] Our beginning premise is that "[t]he function of a summary judgment proceeding is to determine whether a genuine issue of material fact exists. It is not ... to resolve the issues of fact or to arrive at conclusions based thereon." Duckworth v. Bonney Lake, 91 Wn.2d 19, 21, 586 P.2d 860 (1978). The function of the trial court and of this court on review is to determine whether as a matter of law summary judgment should have been granted on the basis of uncontroverted facts in the record.
*655 [4] Hoagland argues that there are numerous facts, circumstances, and inferences which must be necessarily determined by a trier of the fact before sufficient cause may be found. The Board contends on the other hand that the fact of the conviction itself is an adequate basis for the inference that the misconduct was inherently harmful to the school district, and, therefore, the discharge is proper.
No guidelines or criteria have been provided by the legislature to determine when there is sufficient cause for a teacher's discharge, nor do the statutes make conviction for a crime sufficient cause for discharge. The legislature has not seen fit to define "sufficient cause."
There has been little judicial elucidation in Washington of what constitutes "sufficient cause" for discharge of a teacher. The earliest definition appears in the case Browne v. Gear, 21 Wash. 147, 151-52, 57 P. 359 (1899) where the court said:
Such cause, in the absence of a definition in the statute, would seem to be such misconduct relating to her duties as a common school teacher as would justify the revocation of her right to teach; that is, either such incompetency in her vocation in and about the school as made her unfit for the station, or violations of rules in teaching, etc., or such moral turpitude outside her profession as would recoil on her efficiency in her work and injure the school.
In Gaylord v. Tacoma School Dist. 10, 85 Wn.2d 348, 535 P.2d 804 (1975) (Gaylord I), the court, relying on Browne v. Gear, supra, and Denton v. South Kitsap School Dist. 402, 10 Wn. App. 69, 516 P.2d 1080 (1973), defined "sufficient cause" as "conduct which would affect the teacher's efficiency." Gaylord I, at 349. In Gaylord v. Tacoma School Dist. 10, 88 Wn.2d 286, 559 P.2d 1340 (1977) (Gaylord II), the court again considered whether a teacher's admitted homosexual status was sufficient cause for discharge under a school district policy providing for discharge on the grounds of immorality. The court then expanded on its definition of sufficient cause as requiring proof that the *656 questioned conduct adversely affected the teacher's ability to teach, saying:
The moral conduct of a teacher is relevant to a consideration of that person's fitness or ability to function adequately as a teacher of the students he is expected to teach  in this case high school students. See Morrison v. State Bd. of Educ., 1 Cal.3d 214, 225, 461 P.2d 375, 82 Cal. Rptr. 175 (1969).
"Immorality" as a ground of teacher discharge would be unconstitutionally vague if not coupled with resulting actual or prospective adverse performance as a teacher. Denton v. South Kitsap School Dist. 402, 10 Wn. App. 69, 516 P.2d 1080 (1973); Morrison v. State Bd. of Educ., supra at 225 n. 15. The basic statute permitting discharge for "sufficient cause" (RCW 28A.58.100(1)) has been construed to require the cause must adversely affect the teacher's performance before it can be invoked as a ground for discharge. Gaylord v. Tacoma School Dist. 10, supra.

Gaylord v. Tacoma School Dist. 10, supra at 290. (Gaylord II).
The Board contends that Denton forecloses any inquiry into factors relating to the teacher's performance as a teacher. In Denton a junior high school teacher had sexual intercourse with a female high school student from the same school district. When the student became pregnant, she and Denton married. Both in Gaylord I, at 349 and Gaylord II, at 290, the court cited Denton for the proposition that before conduct can constitute sufficient cause it must adversely affect the teacher's performance as a teacher. In Denton there had been two fact-finding hearings before the cause reached the appellate court. The court there said:
[T]he argument that "immorality" per se is not a ground for discharge without a showing of adverse effect upon "fitness to teach" or upon the school has merit (indeed this is a fair inference from Browne v. Gear, supra), ...
Denton v. South Kitsap School Dist. 402, supra at 72. This must be the language which the Gaylord opinions approve. The Denton court's determination that sexual involvement *657 between a teacher and student constitutes sufficient cause per se must be considered as dictum and without viability as a result of the Gaylord opinions.
For sufficient cause to be found the Board must demonstrate that the conduct upon which the sufficient cause allegation is based adversely affects the teacher's fitness to teach. This requirement of necessity poses material issues of fact which must be considered. The impact of the conviction and the conduct underlying it, upon Hoagland's fitness to teach, raises material factual issues which are unresolved here. Morrison v. State Bd. of Educ., 1 Cal.3d 214, 461 P.2d 375, 82 Cal. Rptr. 175 (1969).
We reverse and remand for trial.
ANDERSEN, J., concurs.
ANDERSEN, J. (concurring)
The law in this state is settled. In order to discharge a teacher for misconduct, two things must first be proved by the school district: first, that the teacher was guilty of misconduct; and second, that such misconduct adversely affects the teacher's performance as a teacher.
While the teacher's conviction of grand larceny constitutes undisputed proof of the first element, flatly contradictory affidavits in the record conclusively establish that an issue of material fact does exist as to the second element.
In this case, as in any other, the existence of an issue of material fact precludes a trial judge from deciding a case as a matter of law as was done here.[3] The teacher was entitled *658 to a trial, or to an administrative hearing, as the case may be, on the controverted issue of fact.
I therefore concur.
RINGOLD, J., concurs with ANDERSEN, J.
DORE, J. (dissenting)
I agree with the trial court in ruling as a matter of law, that the plaintiff's felony conviction was "sufficient cause" to discharge him as a teacher.
Although plaintiff was afforded ample opportunity to present his case to the school board, he elected to appeal directly to the Superior Court for Skagit County. By doing so, plaintiff submitted himself to the rules of procedure of that Superior Court.
One of the affidavits filed in this record was that of Thomas J. Pollino, the Superintendent of Mount Vernon School District No. 320, and secretary to the Board of Directors. Among other things, Mr. Pollino stated:
(5) Mr. Hoagland's criminal trial received much publicity in the Mount Vernon area. Between the time of Mr. Hoagland's arrest in January, 1976 and the time of his suspension in mid-March, 1976, numerous articles concerning Mr. Hoagland's activity appeared in the Skagit Valley Herald and the Bellingham Herald. (Numerous comprehensive and detailed articles concerning the plaintiff's trial appeared in numerous articles and were attached to the affidavit.) In one of these articles (Skagit Valley Herald dated May 15, 1976), the reporter quotes Judge Deierlein (the judge hearing the criminal case against Mr. Hoagland) as saying that the attention paid by the media to the case was because of Mr. Hoagland's status as a teacher;
(6) Members of the District's Board of Directors, as well as myself, received personal input from Mount Vernon citizens expressing concern about Mr. Hoagland's criminal activity including bringing stolen property onto District premises.
*659 Copies of newspaper articles appearing the Skagit Valley Herald and the Bellingham Herald, attached to this record, have such catchy headlines as "Motorcycle Thefts Net Charges," "Shop Teacher Charged," "MV School Board Calls Special Session," "School Taking No Action," "Jury Hears Prosecution Case Against Teacher," "Jury Finds Teacher Guilty of Larceny," "Teacher Suspended," "MV School Board Suspends Hoagland," "Hoagland Sues School Board," "MV Board Eyes Hoagland Lawsuit," and "Hoagland Sentenced; He'll Appeal." Anyone reading such newspaper articles could only conclude that the grand larceny conviction of plaintiff and his subsequent trial, appeal and sentencing was well known to the citizenry of Mount Vernon. Plaintiff does not dispute such facts nor could he. It is also undisputed that plaintiff was convicted of a felony, which conviction was affirmed on appeal.
The school board and the plaintiff both believed there were no genuine issues of any material fact for both moved for summary judgment asking for summary disposition.[4] The sole issue before the trial court, and now before this court, is whether a teacher's conviction of the crime of *660 grand larceny by possession of stolen goods, a felony, constitutes "sufficient cause" for his discharge. The trial court, after examining the record, found:
This court finds that the Board of Directors of defendant District had sufficient cause to discharge plaintiff teacher under the agreed facts of this case. Plaintiff's felony conviction is inherently harmful to the teacher-student relation, and therefore harmful to the school district, and plaintiff's continued presence in the classroom would adversely affect the educational process of the district.
Whereas plaintiff previously agreed that there were no genuine issues of fact, he now claims there are for the purpose of this appeal. I believe that plaintiff was correct at the trial level. Hoagland voluntarily elected to forego the opportunity for a hearing before the district's Board of Directors and appealed directly to the Superior Court. In Superior Court he and his attorney advised the court that there were no genuine issues of fact and that the judge should make his decision as a matter of law. The trial judge complied and now on appeal plaintiff claims that there are genuine issues of fact. However, in resolving this appeal I will focus only on defendant's motion for summary judgment.
The Washington Supreme Court has established the following standards for sufficient cause:
The basic statute permitting discharge for "sufficient cause" (RCW 28A.58.100(1)) has been construed to require the cause must adversely affect the teacher's performance before it can be invoked as a ground for discharge.
Gaylord v. Tacoma School Dist. 10, 88 Wn.2d 286, 290, 559 P.2d 1340, 1342-43 (1977). Although the Supreme Court did not explain its standard in detail, the court approvingly cited Denton v. South Kitsap School Dist. 402, 10 Wn. App. 69, 516 P.2d 1080 (1973).
In Denton, the certificated employee was a junior high school teacher who dated and had sexual intercourse with a female high school student from the same school district. *661 When the girl became pregnant, she and Denton married. Like Hoagland in this case, Denton cited California case authority for the proposition that his discharge could not be upheld absent a showing that his sexual misconduct reflects adversely upon his "fitness to teach." Denton v. South Kitsap School Dist. 402, supra at 72.
The Court of Appeals upheld Denton's discharge, disposing of his "fitness to teach" argument as follows:
While the argument that "immorality" per se is not a ground for discharge without a showing of adverse effect upon "fitness to teach" or upon the school has merit (indeed this is a fair inference from Browne v. Gear, supra [21 Wash. 147, 57 P. 359 (1899)]), we decline to set such a requirement where the sexual misconduct complained of directly involves a teacher and a minor student. In our view, the school board may properly conclude in such a situation that the conduct is inherently harmful to the teacher-student relation, and thus to the school district. We are accordingly of the opinion that Mr. Denton's conduct constituted sufficient cause for discharge.
(Italics mine.) Denton v. Kitsap School Dist. 402, supra at 72.
In Denton, the girl was from a different school and there was no allegation that the two ever had sexual intercourse on school premises or during school time. In contrast to Denton, in the subject case Hoagland purchased the stolen motorcycle from one of his former shop students. After stripping off the parts needed for his own motorcycle, Hoagland took the remaining parts of the stolen vehicle to school and allowed his students to work on them.
Part of a teacher's responsibility is to set an example for his students and to act as a role model, a responsibility made necessary by the fact that students spend more time with their teachers than with any persons other than immediate family members and closest friends.
Because of the importance of the teacher's role in the life of a student, a school district board of directors has a duty to the school community to maintain the highest standards *662 of fitness and competence for the weighty task of educating young impressionable students. The United States Supreme Court emphasized this principle in Adler v. Board of Educ., 342 U.S. 485, 493, 96 L.Ed. 517, 72 S.Ct. 380, 27 A.L.R.2d 472 (1952), as follows:
A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds towards the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted.
The California case of Jefferson Union High School Dist. v. Jones, 23 Cal. App.3d 94, 100 Cal. Rptr. 73 (1972), is helpful in analyzing the subject case. In that case the plaintiff's possession of a quantity of marijuana was held sufficient cause for discharge. In so holding, the court relied on the following four factors: (1) the teacher's conduct was reported in the newspaper (thereby coming to the attention of students, fellow teachers, parents, and others); (2) many persons had expressed disapproval or concern at the prospect of having a teacher who had been convicted of marijuana possession instructing students; (3) the teacher's conduct was inconsistent with advice and instructions given the students by their parents; and (4) the teacher's conduct was inconsistent with the standards of behavior the school hoped to instill in its students. All of these factors were present in the subject case.
In Gaylord v. Tacoma School Dist. 10, supra, our Supreme Court upheld the discharge of a homosexual teacher, utilizing the following language at pages 298-99:
It is important to remember that Gaylord's homosexual conduct must be considered in the context of his position of teaching high school students. Such students could treat the retention of the high school teacher by the school board as indicating adult approval of his homosexuality. It would be unreasonable to assume as a matter of law a teacher's ability to perform as a teacher *663 required to teach principles of morality (RCW 28A.67.110) is not impaired and creates no danger of encouraging expression of approval and of imitation.
(Italics mine.) In Gaylord, even though there were no overt acts of homosexuality, our Supreme Court found as a matter of law that Gaylord's ability to perform as a teacher would be impaired by the mere fact that it had become known he was a homosexual. How much more so in the subject case where the plaintiff has been convicted of a criminal felony involving a series of criminal acts committed on the school premises involving students. Any reasonable person would conclude that Hoagland's retention as a teacher would mean to some that the school board favors such activities and would encourage students to behave in similar fashion.
If Hoagland would be reassigned to the classroom in Mount Vernon, a typical question from a pupil would undoubtedly be: "Teacher, you teach us to obey the law and not to steal, yet you have just recently been convicted of grand larceny for doing that very thing. How do you reconcile what you teach with what you actually do?"
How would plaintiff handle that question?

CONCLUSION
Plaintiff was convicted of knowingly possessing stolen goods. His arrest and conviction was made known to the Mount Vernon community through a series of newspaper articles, thereby elevating Hoagland to a high degree of notoriety among students, teachers, parents and other persons interested in the school community. As a result several persons expressed their concern to the district regarding the school employment of a teacher who by his actions appears to condone dishonesty and unlawful acts. This public knowledge of Hoagland's illegal conduct necessarily affects his ability to act as a good example and role model for his students, thereby impairing his fitness to continue teaching in the Mount Vernon community.
*664 I would affirm.
Reconsideration denied August 16, 1979.
Appealed to Supreme Court September 26, 1979.
NOTES
[1] RCW 28A.58.450:

"Every board of directors determining that there is probable cause or causes for a teacher, ... holding a position as such with the school district, hereinafter referred to as `employee', to be discharged or otherwise adversely affected in his contract status, shall notify such employee in writing of its decision, which notification shall specify the probable cause or causes for such action ... Every such employee so notified, at his or her request made in writing and filed with the chairman of the board or secretary of the board of directors of the district within ten days after receiving such notice, shall be granted opportunity for hearing to determine whether or not there is sufficient cause or causes for his or her discharge or other adverse action against his contract status.... Any decision to discharge or to take other adverse action against such employee shall be based solely upon the cause or causes for discharge specified in the notice of probable cause to the employee and established by a preponderance of the evidence at the hearing to be sufficient cause or causes for discharge or other adverse action against his contract status."
[2] "In lieu of requesting a hearing before the board of directors or its designated hearing officer pursuant to the provisions of RCW 28A.58.450 and 28A.67.070, an employee may elect to appeal the action of the board directly to the superior court of the county in which the school district is located by serving upon the clerk of the school board and filing with the clerk of the superior court a notice of appeal within ten days after receiving the notification of the action of the board. The notice of appeal shall set forth in a clear and concise manner the action appealed from. The superior court shall determine whether or not there was sufficient cause for the action of the board of directors and shall base its determination solely upon the cause or causes stated in the notice of the employee."

The presently effective statutory scheme, which neither party contends is applicable here, provides an appeal to the superior court limited to a review of the transcript of the hearing conducted by a hearing officer selected by two attorneys, one chosen by each party, or by stipulation. RCW 28A.58.455; Laws of 1977, 1st Ex. Sess., ch. 7, § 1; RCW 28A.67.070; Laws of 1975, 2d Ex. Sess., ch. 114, § 4.
[3] The law was recently summarized by the State Supreme Court in Sarruf v. Miller, 90 Wn.2d 880, 883, 586 P.2d 466 (1978) as follows:

"Since we are reviewing an order of summary judgment, we must engage in the same inquiry as the trial court. Highline School Dist. 401 v. Port of Seattle, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). We must determine whether there is a genuine issue as to any material fact and whether the moving party was entitled to judgment as a matter of law. Teagle v. Fischer & Porter Co., 89 Wn.2d 149, 570 P.2d 438 (1977); Jacobsen v. State, 89 Wn.2d 104, 569 P.2d 1152 (1977). That both parties moved for summary judgment does not alter the relevant inquiry concerning the factual and legal issues presented. See 6 J. Moore, Federal Practice ¶ 56.13 (2d ed. 1948)."
[4] The majority opinion recites that "Hoagland moved for summary judgment seeking reinstatement from suspension of his employment pending the final hearing in this matter." This is incorrect. Plaintiff's motion for summary judgment reads:

"COMES NOW the plaintiff by his attorney and moves the court for summary judgment for plaintiff as to his right to a pretermination hearing prior to any suspension or discharge by defendants; and for reinstatement in his employment position, back pay and benefits, pending trial herein." (Italics mine.)
The trial court considered such motion as a summary judgment in its oral opinion stating, "Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted." The trial judge's order under date of April 25, 1977, reads, "It is hereby ordered that Plaintiff's Motion for Summary Judgment is denied, and it is hereby ordered that defendant's Motion for Summary Judgment is granted."
The trial court never addressed the issue as to plaintiff's alternate request that he be reinstated in his employment position pending trial, but ruled summarily as a matter of law that plaintiff was not entitled to a hearing on his discharge.