[No. 8668-2-III.   Division Three.   November 19, 1987.]

WILLIAM F. SINNOTT, *Appellant,* v. SKAGIT VALLEY COLLEGE, *Respondent.*

---

*Ronald E. Farley,* for appellant.

*Kenneth O. Eikenberry, Attorney General, Lloyd Peterson, Deputy,* and *Wendy K. Bohlke, Assistant,* for respondent.

THOMPSON, J.—William Sinnott, a tenured welding instructor with Skagit Valley College, appeals the decision of the trial court affirming his dismissal. We affirm.

Mr. Sinnott challenged his employment discharge and was given a hearing before a hearing examiner and the College Dismissal Review Committee. The examiner and committee recommended dismissal to the Skagit Valley College Board of Trustees. The board adopted the recommendation and terminated Mr. Sinnott's employment for cause. On appeal the superior court upheld the dismissal, and Mr. Sinnott appeals that decision.

As a threshold issue, the College argues that since our review of the administrative decision is on the record of the administrative tribunal and not the superior court, Mr. Sinnott has violated RAP 10.3(a)(3) by asserting assignments of error by the trial court rather than the board of trustees. The State Higher Education Administrative Procedure Act, RCW 28B.19.150(5), limits our review to the record of the administrative hearing. *See Stastny v. Board of Trustees,* 32 Wn. App. 239, 245, 657 P.2d 496 (1982), *review denied,* 98 Wn.2d 1001, *cert. denied,* 460 U.S. 1071, 75 L. Ed. 2d 950, 103 S. Ct. 1528 (1983). That record was the basis for the board's decision, and review by the superior court and this court.

■ RAP 10.3(a)(3) provides: "*Assignments of Error.* A separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." The statute and rule are consistent and application of both leads to the reasonable conclusion that in an administrative appeal, it is proper to assign error to a trial court's actions in its review of the record of the administrative hearing. *See, e.g., Lehmann v. Board of Trustees,* 89 Wn.2d 874, 878, 576 P.2d 397 (1978) (appellate review of trial court findings regard-

ing tenured faculty member's dismissal from a private college).

### FIRST AMENDMENT FREEDOM OF SPEECH

Mr. Sinnott first contends his dismissal impermissibly resulted from his having exercised his constitutionally protected right to free speech. After discussing problems in the welding department with a reporter from the Skagit Valley Herald, Mr. Sinnott was summoned to the president's office and given a letter that conditioned his continued employment on his agreeing to stop making derogatory remarks about the welding program and other employees and cooperating in curriculum modification and team teaching. Mr. Sinnott again met with the president and, when he refused to sign the letter, his employment at the College was terminated for unprofessional conduct and insubordination.

In determining whether an employee's dismissal violates his constitutional right to free speech, the interest of the employee as a citizen in commenting on matters of public concern must be balanced against the interests of the state as employer in promoting efficiency of the public services it performs through its employees. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 284, 50 L. Ed. 2d 471, 481–82, 97 S. Ct. 568 (1977) (quoting *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 20 L. Ed. 2d 811, 817, 88 S. Ct. 1731 (1968)). Whether the matter is of public concern is determined by the content, form, and context of the given statement as revealed by the whole record. *Connick v. Myers,* 461 U.S. 138, 147–48, 75 L. Ed. 2d 708, 720, 103 S. Ct. 1684 (1983). Employee grievances concerning internal policy or matters of personal interest are not protected under this theory. *Myer v. UW,* 105 Wn.2d 847, 851, 719 P.2d 98 (1986). Appropriate state interests against which First Amendment rights of teachers must be balanced include, *e.g.*:

> (1) The need to maintain harmony among coworkers; (2) the need to curtail conduct impeding the teacher's proper and competent performance of his daily duties; (3) the

need to prevent activities disruptive of the educational process and to provide for the orderly functioning of the university.

*Stastny,* at 251. Finally, the inquiry into the protected status of speech is one of law, not fact. *Connick,* 461 U.S. at 148 n.7, 75 L. Ed. 2d at 720. If a nonpermissible reason such as the exercise of First Amendment rights played a substantial part in the actual decision to dismiss, after the employee makes a showing of protected conduct and that conduct was a substantial or motivating factor, the burden shifts to the board to show by a preponderance of the evidence that it would have reached the same decision, even in the absence of the protected conduct. *Mt. Healthy,* 429 U.S. at 287, 50 L. Ed. 2d at 484; *Jordan v. Oakville,* 106 Wn.2d 122, 132, 720 P.2d 824 (1986).

Mr. Sinnott contends his dismissal was based on protected activity involving comments on matters of public concern regarding the proper operation of the welding program. The College answers Mr. Sinnott's conduct was not protected because his derogatory statements damaged the professional reputation of his colleagues, and though his discussions with the press were a factor in the termination decision, the decision would have been the same in the absence of that conduct.

The administrative record contains testimony by James Ford, president of Skagit Valley College, that in 1976 he called Mr. Sinnott into his office to discuss derogatory remarks Mr. Sinnott allegedly made about other faculty members. Thereafter, in 1976 and 1979, President Ford again had discussions and meetings with Mr. Sinnott concerning his repeated criticism of certain faculty members and use of inappropriate language. In April 1980, Mr. Sinnott alerted College officials to what he alleged was theft by the chairman of the welding department. The allegations were investigated by local authorities and dismissed for lack of evidence. Other College officials involved with the welding department and occupational education program testified that Mr. Sinnott had a history of repeated profan-

ity and ongoing criticism of his supervisors and co–workers.

In February 1981, Mr. Sinnott received a letter from a superior advising him he needed to improve his professional conduct. The letter referred to repeated attempts by Mr. Sinnott to discredit other welding instructors and noted that his behavior was "nearing, or may have even reached, a level that is sufficiently unprofessional to warrant disciplinary action". Thereafter Mr. Sinnott was given a positive evaluation wherein it was noted he appeared to be meeting conditions for improvement previously outlined.

A note was placed in Mr. Sinnott's personnel file indicating written information concerning a January 1982 reprimand was in the welding file. Additionally, according to the associate dean of occupational education, Mr. Sinnott's 1983 evaluation contained language critical of his lack of cooperation, but after a conference with Mr. Sinnott during which he promised to cooperate in the future, that language was deleted.

On January 27, 1984, the State Board for Community College Education reviewed the welding program and listed several deficiencies in its recommendations for improvement. After the review, Mr. Sinnott met with a reporter from the Skagit Valley Herald, and commented, *inter alia,* that the report was a "whitewash". Mr. Sinnott criticized inconsistent standards used to certify instructors and instructors' lack of sufficient course work in welding–related mathematics. Mr. Sinnott was reported to have accused College administrators of replacing a former welding advisory board with "members more to their liking". He was also quoted as saying he knew of at least two instances where students were given credits for welding courses they did not actually take.

Richard Nowadnick, Dean of Educational Services, testified to Mr. Sinnott's continuous profanity and criticism and the efforts of the College to put an end to it. Mr. Sinnott could not get along with the other instructor in the welding department, and two previous instructors left because of such problems. From May 1979 until July 1982, when Mr.

Nowadnick retired, 10 memos were generated by Mr. Sinnott's conduct. The last memo warned Mr. Sinnott that if his unprofessional conduct continued, Mr. Nowadnick would recommend his employment be terminated. Mr. Nowadnick's successor, George Delaney, testified problems with Mr. Sinnott continued. In March 1984, just 1 month prior to the dismissal, Mr. Delaney met with Mr. Sinnott seeking his cooperation in implementing program changes suggested by the review committee. Mr. Sinnott's response was, "It won't work."

Joe Pederson, Associate Dean for Occupational Education, and Susan Tinker, his successor, testified concerning the same problems. One of the things noted by the review committee in 1984 was that the animosity between instructors was affecting their teaching. On April 6, 1984, a Skagit Valley Herald reporter met with the College president and other officials concerning Mr. Sinnott's comments to the press. On April 12, Mr. Sinnott was called to the president's office. He brought his union representative with him. At that time the College president gave Mr. Sinnott a letter outlining conditions to continued employment:

1) . . . make no derogatory statements about institutional employees to students, other faculty members or the community;

2) . . . make no derogatory statements to students, other faculty members or the community concerning the Welding program; [and]

3) . . . fully cooperate in the Welding curriculum modification and, effective Fall 1984, . . . team–teach a coordinated program with the other Welding instructor, as directed by the Associate Dean for Occupational Education.

That same day an article containing comments by Mr. Sinnott was published in the Skagit Valley Herald. On April 17, the College president and dean of education services again met with Mr. Sinnott and his union representative. Although Mr. Sinnott agreed to discuss the letter's third condition, he refused to agree to the first two. After Mr. Sinnott refused to sign the letter, he was given notice

of his dismissal, based on unprofessional conduct and insubordination.

The first inquiry in addressing Mr. Sinnott's contention that talking to the press was an impermissible basis for dismissal is whether his speech amounted to comments on matters of public concern. We view the content, form, and context of his statements as revealed by the entire record. *Connick*, 461 U.S. at 147–48; *Meyer*, 105 Wn.2d at 851.

Although we concur with the determination that:

> an individual cannot bootstrap his individual grievance into a matter of public concern either by bruiting his complaint to the world or by invoking a supposed popular interest in all aspects of the way public institutions are run.

*Meyer*, at 851–52 (quoting *Mahaffey v. Kansas Bd. of Regents*, 562 F. Supp. 887, 890 (D. Kan. 1983)), we conclude the tone of the article was directed toward the comprehensiveness of the program review and did not necessarily contain expressions of disagreement with internal decisions of immediate supervisors. The quality of the program was of sufficient public concern when balanced against efficiency of public services to warrant protection. *See Pickering*, 391 U.S. at 568, 20 L. Ed. 2d at 817. The balance of interests here is close, however, considering the need to maintain harmony among co–workers and to curtail conduct impeding proper and competent performance of duties. *See Stastny*, at 251.

The president acknowledged that although the meeting with the press was a factor in Mr. Sinnott's employment termination it was not the sole or principal factor. It was merely the last straw. Thus, the question becomes whether the College has shown by a preponderance of the evidence that it would have reached the same decision in the absence of the protected conduct. *See Mt. Healthy*, 429 U.S. at 287; *Jordan*, at 132. Given the substantial testimony regarding Mr. Sinnott's lengthy history of criticism and profanity, and the College's efforts to deal with the problems, we conclude the College met its burden.

Accordingly, Mr. Sinnott's dismissal did not violate his First Amendment right to freedom of speech, nor did the actions of the College represent a sufficiently chilling limitation. *See Meyer,* 105 Wn.2d at 852.

## VAGUENESS/OVERBREADTH

■ Mr. Sinnott contends "insubordination" and "unprofessional conduct" as used in the notice of dismissal are unconstitutionally vague. Under the vagueness doctrine, no prohibition can stand or penalty attach where an individual could not reasonably understand his contemplated conduct is proscribed. *Stastny,* at 252. An administrative agency rule violates the first essential of due process of law if it forbids an act in terms so vague, persons of common intelligence must guess at its meaning and may differ in applying it. *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973); *Stastny,* at 252–53. "Insubordination" has been defined as the willful refusal of a teacher to obey reasonable rules and regulations. *Simmons v. Vancouver Sch. Dist. 37,* 41 Wn. App. 365, 373, 704 P.2d 648, *review denied,* 104 Wn.2d 1018 (1985); *Stastny,* at 247. Here, Mr. Sinnott's continued use of profane language and criticism of other instructors after repeated direction by his superiors did constitute insubordination within the plain meaning of the term.

A rule may violate substantive due process for overbreadth if it is so broad it may not only prohibit unprotected behavior, but constitutionally protected activity as well. *Grayned v. Rockford,* 408 U.S. 104, 114, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972); *Stastny,* at 254. In essence, Mr. Sinnott is arguing that terminating an employee for "unprofessional conduct" runs the risk of punishing protected First Amendment speech. That is not the case, however, since under the test set forth in *Mt. Healthy,* 50 L. Ed. 2d at 482–84, "protected speech" is excluded in the determination of whether the dismissal is appropriate. Therefore, an employee cannot be held to be punished for protected activity. *See Arnett v. Kennedy,* 416 U.S. 134,

162, 40 L. Ed. 2d 15, 94 S. Ct. 1633 (1974). Finally, there is no merit in Mr. Sinnott's reiteration of the facts in support of his argument that even if "insubordination" and "unprofessional conduct" were constitutional, they were applied in an unconstitutional manner.

> "[I]t is not feasible or necessary for the Government to spell out in detail all that conduct which will result in retaliation. The most conscientious of codes that define prohibited conduct of employees include 'catchall' clauses prohibiting employee 'misconduct,' 'immorality,' or 'conduct unbecoming.' We think it is inherent in the employment relationship as a matter of common sense if not [of] common law that [a Government] employee . . . cannot reasonably assert a right to keep his job while at the same time he inveighs against his superiors in public with intemperate and defamatory [cartoons]. . . . [Dismissal in such circumstances neither] comes as an unfair surprise [nor] is so unexpected as to chill . . . freedom to engage in appropriate speech."

*Arnett,* 416 U.S. at 161–62, 40 L. Ed. 2d at 37 (quoting *Meehan v. Macy,* 392 F.2d 822, 835 (D.C. Cir.), *modified,* 425 F.2d 469 (1968), *aff'd,* 425 F.2d 472 (1969) (en banc)).

ADMISSION OF EVIDENCE

Article 4, section 14 of the collective bargaining agreement provides that personnel files of members of the bargaining unit shall be for the "sole purpose of recording all documents and other matters relating to an academic employee's employment by the College." Each academic employee covered by the agreement has the right of access to his or her personnel file. During the hearing, notes and memoranda regarding Mr. Sinnott's conduct, prepared by the president and other College officials, were admitted into evidence. The evidence had been kept in program files and not made a part of Mr. Sinnott's personnel file. Mr. Sinnott's attorney objected to the evidence, contending Mr. Sinnott did not have notice of it and it was kept in violation of the contract. The trial court ruled the exhibits admissible for the limited purpose of refreshing witnesses'

recollection.

ER 612 provides in relevant part:

> If a witness uses a writing to refresh his memory for the purpose of testifying, either: while testifying, or before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross–examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

Since each witness, after reviewing the writings, testified to independent recollection of meetings and conversations regarding the asserted conduct, admission of the evidence was not error. *See Davis v. Oregon State Univ.,* 591 F.2d 493, 497 (9th Cir. 1978).

### PROGRESSIVE DISCIPLINE

Article 9, section 4 of the collective bargaining agreement requires that an attempt be made to resolve matters without formal dismissal procedures. Although Mr. Sinnott contends this provision was not satisfied, the record indicates otherwise. Not only was Mr. Sinnott given many warnings during the course of his employment, but the April 1984 letter itself was a final attempt to resolve the problems without terminating Mr. Sinnott. The progressive discipline requirement was in fact satisfied. *See Stastny,* at 255–56.

### SUFFICIENT CAUSE

■ Finally, we examine whether the trial court erred in ruling the College had established just cause for termination. Although article 9, section 4 of the collective bargaining agreement sets forth examples of "sufficient cause", one of which includes "unprofessional conduct", sufficient cause is not defined by Washington statute. *Simmons,* at 375. Citing *Hoagland v. Mount Vernon Sch. Dist. 320,* 95 Wn.2d 424, 623 P.2d 1156 (1981) and *Gaylord v. Tacoma Sch. Dist. 10,* 85 Wn.2d 348, 535 P.2d 804 (1975), Mr. Sinnott contends that for sufficient cause to exist, the conduct

complained of must substantially affect the performance and fitness of the member *as a teacher*. On the contrary, although a lack of fitness to teach is one basis for dismissing a teacher, it is not a requirement of sufficient cause. *Simmons,* at 378. Moreover *Hoagland* and *Gaylord* can be distinguished on the basis that the conduct at issue there was carried on outside the teacher's profession. *See Simmons,* at 378.[1]

A person has a legitimate expectation of freedom from arbitrary action, which means being treated consistent with the statute and policies covering his employment. *Williams v. Seattle Sch. Dist. 1,* 97 Wn.2d 215, 222, 643 P.2d 426 (1982); *Hasan v. Frederickson,* 37 Wn. App. 800, 804, 683 P.2d 203 (1984). Arbitrary and capricious action has been defined as willful and unreasoning action without consideration and in disregard of the facts and circumstances. *Hasan,* at 804. The board had before it the entire record of the hearing and adopted the findings and conclusions of the hearing examiner with some revisions. The board's findings and conclusions made clear reference to the testimony and exhibits in the record; no willful or unreasoning action is apparent.

A decision is clearly erroneous if, although there may be evidence to support a finding, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Sherman v. Moloney,* 106 Wn.2d 873, 880, 725 P.2d 966 (1986) (quoting *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324, 646 P.2d 113 (1982) (quoting *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969), *cert. denied,* 459 U.S. 1106 (1983)). The substantial evidence in the record regarding Mr. Sinnott's open criticism of the welding program and fellow instructors negates his assertion the action of the College was clearly

---

[1]We note sufficient cause to discharge a classified public school employee has been defined by analogy to certificated employee case law and requires an unremediable deficiency which (1) materially and substantially affects performance, or (2) lacks any positive aspect or legitimate professional purpose. *Butler v. Lamont Sch. Dist. 246,* 49 Wn. App. 709, 745 P.2d 1308 (1987).

erroneous.

The record supports the determination regarding insubordination and unprofessional conduct. *See Simmons,* at 373.

Affirmed.

McINTURFF, C.J., and GREEN, J., concur.

Review denied by Supreme Court March 1, 1988.