[No. 3789–4–III. Division Three. July 30, 1981.]

Larry Pryse, *Appellant,* v. Yakima School District No. 7, *Respondent.*

*David H. Putney* and *Halverson, Applegate & McDonald,* for appellant.

*Rocky L. Jackson,* for respondent.

GREEN, J.—Larry Pryse appeals from a judgment affirming his discharge by the Yakima School District. The district cross–appeals from the court's refusal to award it the cost of transcribing the record.

The questions presented are: (1) What is the appropriate standard of review? (2) Was the evidence sufficient to support Mr. Pryse's discharge or should he have been placed on probation because the conduct was remedial? (3) Did the district violate their contract with the Yakima Education Association by failing to (a) give Mr. Pryse prompt notice of the charges against him, and (b) follow the policy of progressive discipline outlined therein? (4) Was it error to consider Mr. Pryse's conduct in prior years? and (5) Is the district entitled to recover its cost of transcribing the

record on appeal? We affirm.

Mr. Pryse was a physical education teacher and coach at Davis High School in Yakima. On April 12, 1979, the superintendent of the Yakima School District notified Mr. Pryse by letter that he had found "probable cause for your discharge exists." The letter then stated:

I have found that the following incidents have occurred during the 1978–1979 school year:

That you have throughout the 1978–79 school year made improper and clearly sexually suggestive remarks to several female students who were physical education assistants in your classes. These remarks include, but are not limited to, remarks that your female assistants would be given an "A" grade if they took a ride with you to the "boonies" in your "love machine" automobile, and that you would grade them there. Also, you made statements to the effect that girls had been getting exercise between the sheets. You specifically asked one female assistant when the first time was she went to bed with a male.

That on at least two occasions you requested and allowed a female assistant to remain in the PE office adjacent to the boys' shower room while the boys' PE class showered. The girl could see into the shower room and observed the boys undress and shower. Likewise the boys could see into the PE office and observed the girl. This female student requested to leave and stated she was embarrassed, a statement to which you responded by laughing.

That on several occasions you have made improper physical contact with female assistants. Specifically, you have grabbed or slapped at least one assistant on the buttocks. You have hugged girls against their will. You have placed your hand on one assistant's bare knee, causing her to remove your hand and cover her knee with her dress.

That you advised one girl that the only way she could make up absences from a previous trimester PE class was to be your assistant, that way you could chase her around your office.

That as a result of some of your actions described above, two of your assistants dropped the class because they could not stand the sexual remarks you often made to them.

Based upon the above described incidents, I find there is probable cause for your discharge. Your actions were highly improper, immoral and unprofessional conduct. The student teacher relationship between you and the female students was damaged to such a degree that they felt forced to drop the class rather than be degraded by your remarks.

Your actions show that you have breached your contract to teach in a manner required of a certificated teacher of the District and the State. You are therefore discharged effective immediately.

Upon receipt of this letter Mr. Pryse timely requested a hearing.

An extensive hearing was held before a hearing officer. Six girls testified on behalf of the district. Their testimony supported the allegations contained in the probable cause letter. The girls further testified the statements occurred, for the most part, out of the presence of other witnesses.[1]

Mr. Pryse denied that he made most of the statements and produced numerous witnesses who testified they never saw him alone with any of the witnesses or heard any comments which could be construed to be sexually offensive. Some testified such statements as "losing it between the sheets" were made by other physical education teachers, in a joking way, to male athletes. However, such statements

---

[1]Illustrative of their testimony were statements by Mr. Pryse to the effect that he would take them to the "boonies in his love machine" to grade them, or "to see what they were made of", or "to take them one at a time to show them the ropes". Other statements included, "It's you and me, baby, to the boonies. You got something I want 'meaning my body,' and I have something you want"; "If you want to see something, I've got plenty to show you". One girl testified he stated that if she went to his house, "He would have me screaming." Another girl testified that when she refused an offer, he stated, "Well, I'm probably too big for you, anyway." Another witness testified, "He stated I should date older men because they couldn't get me pregnant, meaning himself, the way he said it." One witness, who rode in Mr. Pryse's car, stated that after she sat down in the seat he told her "The seats recline, you know. . . . Okay, now spread them." Some girls testified concerning remarks made with respect to sexual relationships between the girls and other students. When they were late for class, he asked them if they had "too much exercise between the sheets" with their boyfriends that weekend or the previous night. On another occasion, a witness testified that Mr. Pryse told her, "Don't give my players too much tonight, . . . You can give it to me."

were not made in the presence of female students.

The hearing officer, in a comprehensive opinion, found the girls' testimony was credible. The opinion notes the statements were of the type that would not be made in the presence of others. Further, none of the girls had any close relationship with one another. He concluded the conduct was sufficient cause for discharge and entered an order sustaining Mr. Pryse's termination. Mr. Pryse appealed this decision to the superior court where it was affirmed.

First, we consider the appropriate standard of review. Mr. Pryse contends de novo review is the correct standard of review because a mixed question of law and fact is involved. *Sargent v. Selah School Dist. 119,* 23 Wn. App. 916, 599 P.2d 25 (1979). On the other hand, the district contends the history of appellate review in teacher discharge cases and recent statutory amendments indicate a legislative intent to depart from de novo review. It is urged that we reconsider and clarify the broad language contained in *Sargent* and review this case under the clearly erroneous standard. To do otherwise, it is argued, would nullify the amendments. The district's position is well taken.

Prior to 1975, teacher discharge hearings were before school board members. RCW 28A.58.450. An appeal from a board decision to superior court was heard de novo. RCW 28A.58.480. The superior court gave "deference to the board's findings" but did not surrender "its own expertise in the field of law in favor of the limited legal training of the board under the guise of the 'substantial evidence' standard of review." *Francisco v. Board of Directors,* 85 Wn.2d 575, 583–84, 537 P.2d 789 (1975). The court received evidence along with the administrative record and made an independent judgment. *Reagan v. Board of Directors,* 4 Wn. App. 279, 480 P.2d 807 (1971). On review, the appellate court affirmed the superior court if its findings were supported by substantial evidence. *Francisco, supra* at 577–78.

In 1975, these procedures were changed by statutory amendment. Discharge hearings are now before hearing

officers who "shall be . . . member[s] in good standing of the Washington state bar association." They are required to rule upon questions of law, procedure and the admissibility of evidence according to the laws of this State. Additionally, written findings of fact, conclusions of law and final decision are entered. The entire proceeding must be recorded. RCW 28A.58.455.

The amendment significantly changed the scope of review on appeal from a hearing officer's decision. Now, the superior court review is confined to the "verbatim transcript of the hearing and the papers and exhibits admitted into evidence". RCW 28A.58.480. Further:

The court may affirm the decision of the board or hearing officer or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the employee may have been prejudiced because the decision was:
(1) In violation of constitutional provisions; or
(2) In excess of the statutory authority or jurisdiction of the board or hearing officer; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
(6) Arbitrary or capricious.

*Id.* This provision is identical to RCW 34.04.130(6)(a)–(f) of the administrative procedures act.

Recently, in *Hoagland v. Mount Vernon School Dist. 320,* 95 Wn.2d 424, 428, 623 P.2d 1156 (1981), the court held in most teacher discharge cases:

[I]t will be a question of fact whether the complained of acts constitute sufficient cause. *See Gaylord v. Tacoma School Dist. 10,* 88 Wn.2d 286, 559 P.2d 1340 (1977); *Browne v. Gear,* 21 Wash. 147, 57 P. 359 (1899); *see also Board of Educ. v. Jack M.,* 19 Cal. 3d 691, 566 P.2d 602, 139 Cal. Rptr. 700 (1977). Sufficient cause, though not statutorily defined, has been interpreted to mean a showing of conduct which materially and substantially affects the teacher's performance. *Gaylord v. Tacoma School Dist. 10, supra; Browne v. Gear, supra; see also*

*Fisher v. Snyder,* 346 F. Supp. 396 (D. Neb. 1972).[2]

Here, the thrust of Mr. Pryse's appeal is a challenge to the factual findings of the hearing officer. He contends those findings are not supported because

the district [presented] vague, general and scanty evidence to support a charge of lewd language, [he denied] the allegations and a substantial number of witnesses [testified] that the allegations made by the district [were] not true.

These contentions challenge "the propriety of an administrative conclusion that raw facts, . . . within the agency's power to find, fall under a statutory term as to whose meaning, at least in [this] case, there is little dispute;" and therefore involve factual questions. *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 283, 525 P.2d 774 (1974).

In *Leschi, supra* at page 282, the court stated:

[J]udicial review of findings of fact made by administrative agencies is limited to a determination of whether the administrative findings are clearly erroneous . . .

In *Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 274–75, 552 P.2d 674 (1976), the court noted:

The "clearly erroneous" standard provides a broader review than the "arbitrary or capricious" standard because it mandates a review of the entire record and all the evidence rather than just a search for substantial evidence to support the administrative finding or decision. . . . Judicial review under the "clearly erroneous" standard set out in RCW 34.04.130(6)(e) also requires consideration of the "public policy contained in the act of the legislature authorizing the decision." *See Ancheta v. Daly* [77 Wn.2d 255, 461 P.2d 531 (1969)], *supra* at 260–61. Consequently, that public policy is "a

---

[2]In *Gaylord v. Tacoma School Dist. 10,* 85 Wn.2d 348, 535 P.2d 804 (1975), the court referred to the determination of sufficient cause, *i.e.,* conduct which would affect the teacher's efficiency as a "crucial question of fact." In *Board of Educ. v. Jack M.,* 19 Cal. 3d 691, 698 n.3, 566 P.2d 602, 139 Cal. Rptr. 700 (1977), the court noted a determination of fitness to teach flows from the evidence itself without resort to further legal principles.

part of the standard of review." *See Schuffenhauer v. Department of Employment Security,* 86 Wn.2d 233, 235, 543 P.2d 343 (1975).

Therefore, the record must be examined under the clearly erroneous standard and the case reversed if, after reviewing the entire record, we are left with a definite and firm conclusion a mistake has been committed. *Ancheta v. Daly,* 77 Wn.2d 255, 259, 461 P.2d 531 (1969).

We recognize that in *Sargent* this court indicated a mixed question of law and fact was involved in that case and the review would be de novo under the error of law standard in RCW 28A.58.480(4). To find a mixed question of law and fact, there must be a "dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term . . ." *Leschi Improvement Council, supra* at 283. Here, there is neither. Either the statements were made by Mr. Pryse or they were not. The hearing officer's decision was based on the witnesses' credibility, and we should not substitute our judgment on that question. Consequently, we decline to apply the error of law standard to this case. Our determination is consistent with *Hoagland, supra,* which had not been decided at the time of the *Sargent* decision.

We have reviewed the record in light of the clearly erroneous standard and conclude it supports the findings and decision of the hearing officer and the affirmance on review in superior court.[3]

■ Second, Mr. Pryse contends the district did not carry its burden of showing the alleged conduct had an impact on his teaching efficiency, or was not remedial. His contention has no merit. We are not faced here with conduct involving a teacher's private life unrelated to school

---

[3]We note the trial judge, after a complete review of the record, was in substantial agreement with the hearing officer's conclusions, and stated, "This court would do so independently of any constraints upon de novo review contained in RCW 28A.58.480," and further, he did not believe the "conclusions as to the facts of the case were erroneous and would independently have found the more flagrant statements attributed to Mr. Pryse to have been made."

activities. *See Morrison v. State Bd. of Educ.,* 1 Cal. 3d 214, 461 P.2d 375, 381, 82 Cal. Rptr. 175 (1969). Nor did the conduct have any positive educational aspect or legitimate professional purpose. Instead, it was sexually exploitive and occurred during school hours. Such conduct with minor students is inherently harmful to the student–teacher relationship and impacts the teacher's efficiency. *See Denton v. South Kitsap School Dist. 402,* 10 Wn. App. 69, 72, 516 P.2d 1080 (1973); *Weissman v. Board of Educ.,* 190 Colo. 414, 547 P.2d 1267 (1976). Moreover, several witnesses testified the conduct continued throughout the time they were assistants in his classes. They stated they consequently did not want to be alone with him and some dropped his classes. Other teachers testified they would have reported the improper comments had they overheard them. This testimony infers Mr. Pryse's conduct was unacceptable to them. Retention of Mr. Pryse under these circumstances would have been improper. As the court stated in *Gaylord, supra* at 88 Wn.2d 298–99:

> It would be unreasonable to assume as a matter of law a teacher's ability to perform as a teacher required to teach principles of morality (RCW 28A.67.110) is not impaired and creates no danger of encouraging expression of approval and of imitation. Likewise to say that school directors must wait for prior specific overt [acts] before they act to prevent harm . . . is to ask the school directors to take an unacceptable risk in discharging their fiduciary responsibility of managing the affairs of the school district.

Teachers are engaged in a profession and should present an example for their students to follow. The conduct here is below the standard required of a professional calling. *See* Annot., 78 A.L.R.3d 19 (1977). The hearing officer's conclusion that the facts in this case were sufficient cause to warrant discharge is clearly supported by the record.

Third, Mr. Pryse contends the district breached its contract with the Yakima Education Association of which he was a member, because he did not receive prompt notice of the charge against him and the district did not follow the

policy of progressive discipline outlined in the contract. We disagree. The contract provides:

> Any serious charge against a teacher by a parent, student, or other person, which if proven true would be a basis for discipline, shall be called *promptly* to the attention of the teacher.

> The District agrees to follow the policy of progressive discipline which includes verbal warning, reprimand, suspension with pay, and nonrenewal or discharge as a final and last resort. Some charges of a serious nature may require omitting some of these steps.

(Italics ours.) The hearing officer's conclusion that the district acted promptly in bringing the charge to Mr. Pryse's attention was correct. The initial information received by the superintendent linked Mr. Pryse only with "possible mental abuse of female students." Spring vacation came between the time the superintendent received this information and his receipt of statements by the students involved. He then immediately met with the girls to verify the statements and the letter of probable cause was issued the following day. Under these circumstances, we find the notice was sufficiently prompt to satisfy the contractual provision. Moreover, no prejudice has been shown. It is evident from the record that Mr. Pryse received a full and complete hearing on the matter and fully cross–examined all of the witnesses. Consequently, we find no error.

Neither do we find the district was required to discipline Mr. Pryse through remedial measures rather than discharge him as provided by the policy of progressive discipline stated in the contract. Here, the charges were sufficiently serious to allow the district under the contract to omit the interim disciplinary steps.

■ Fourth, Mr. Pryse contends the hearing examiner erred in allowing two witnesses to testify about conduct which occurred in years preceding his present employment contract. He argues that under *In re Black,* 47 Wn.2d 42, 287 P.2d 96 (1955), this conduct could not be introduced as evidence of sufficient cause for dismissal under his present contract. One witness' statements, however, were admitted

to impeach Mr. Pryse's testimony that he had *never* made sexual remarks to any student during his 24 years of teaching. The hearing officer stated several times the testimony would be considered only for impeachment purposes. It was not too remote to be relevant for that purpose. As to the second witness, we adopt the hearing officer's determination:

> Where, as here, the nature of the conduct is such that students would be reluctant to come forward and disclose the conduct, therefore, the conduct only became know[n] in a subsequent school year, and where the conduct was immoral, it would appear that the reasoning of the *In re Black* case would not be appropriate. [Even disregarding her testimony], there is still enough evidence of immoral conduct occurring during the 1978–79 school year to be sufficient cause for discharge.

*See also Sargent, supra* at 923.

Finally, the district, in its cross appeal, contends under RCW 4.84.180,[4] the trial court erred in refusing to grant its costs for providing the record on appeal. We find no error.

█ RCW 28A.58.455(4) requires the district to pay all fees and expenses of the hearing officer in connection with the administrative hearing. The hearing officer is authorized to award the teacher reasonable attorney's fees if the teacher prevails. RCW 28A.58.455(7)(c). RCW 28A.58.460 provides that the teacher may appeal the school board's decision to the superior court, and RCW 28A.58.470 states:

> The clerk of the superior court, within ten days of his receipt of the notice of appeal shall notify in writing the chairman of the school board of the taking of the appeal, and within twenty days thereafter the school board shall *at its expense* file the complete transcript of the evidence

---

[4] RCW 4.84.180 provides:

"When the decision of a court of inferior jurisdiction, in an action or special proceeding, is brought before the supreme court, court of appeals, or a superior court for review, such proceedings shall, for purpose of costs, be deemed an action at issue upon a question of law, from the time the same is brought into the supreme court or superior court, *and costs thereon may be awarded and collected in such manner as the court shall direct,* according to the nature of the case." (Italics ours.)

and the papers and exhibits relating to the decision complained of . . .

(Italics ours.) If the teacher prevails on appeal, the court, in its discretion, may award reasonable attorney's fees and taxable costs. These statutes do not authorize the district to recover its costs or attorney's fees. Considering an analogous statutory issue in *Zoutendyk v. Washington State Patrol,* 27 Wn. App. 65, 70, 616 P.2d 674 (1980), the court said:

> [T]he statutory scheme (by its resounding silence) is clear. The entity which bore the initial cost cannot recoup that cost.

The holding was affirmed on review by the Supreme Court in 95 Wn.2d 693, 628 P.2d 1308 (1981). Likewise, here, the legislature expressly provided the conditions under which costs would be allowed to a teacher, but omitted any reference to them in relation to the district. By its silence, the legislature implied the district would not be reimbursed for its costs in providing a transcript.[5]

Affirmed.

McINTURFF, C.J., concurs.

MUNSON, J. (concurring)—*Zoutendyk v. Washington State Patrol,* 95 Wn.2d 693, 628 P.2d 1308 (1981), *aff'g* 27 Wn. App. 65, 616 P.2d 674 (1980), has changed what was a strong dissent on the issue of who bears the cost on appeal, to a reluctant concurrence. While I might differ with the unanimous opinion of my distinguished colleagues of Division Two, I must recognize the rule of supremacy, when a unanimous opinion of our Supreme Court concurs with their analysis.

In *Zoutendyk,* both courts interpreted the phrase, "Pay-

---

[5]We note that where a statute is silent as to who either bears the initial cost or may recover costs, the court has applied the general rule awarding costs to the prevailing party. *Portage Bay–Roanoke Park Community Council v. Shorelines Hearings Bd.,* 92 Wn.2d 1, 593 P.2d 151 (1979); *Bennett v. Board of Adjustment,* 23 Wn. App. 698, 701, 597 P.2d 939 (1979). These cases are not applicable here.

ment of the cost of a transcript used on appeal shall await determination of the appeal, and shall be made by the employing agency if the employee prevails", (RCW 41.06-.180) to mean the agency always pays. The Court of Appeals opinion concluded: "Again, the statutory scheme (by its resounding silence) is clear. The entity which bore the initial cost cannot recoup that cost." *Zoutendyk v. Washington State Patrol, supra,* 27 Wn. App. at 70. Thus, the failure of the legislature to specifically state that the employee who did not prevail would have to reimburse the transcribing agency for its costs of transcription results in the public employer always paying for the record on appeal.

As *Zoutendyk* and this case indicate, payment for transcription of the proceedings is a policy decision for the legislature. Perhaps by its failure to state who pays if the public employee does not prevail on appeal, the legislature has made that decision.

I am constrained to concur.

Reconsideration denied August 26, 1981.

Review denied by Supreme Court October 30, 1981.