[No. 84243-4.   En Banc.]
Argued January 27, 2011.     Decided September 29, 2011.

FEDERAL WAY SCHOOL DISTRICT NO. 210, *Respondent*, v. DAVID
VINSON, *Petitioner*.

*Tyler K. Firkins* (of *Van Siclen Stocks & Firkins*), for petitioner.

*Jeffrey Ganson* and *Rachel E. Miller* (of *Dionne & Rorick LLP*), for respondent.

*Shelby A. Hopkins* on behalf of Washington Education Association, amicus curiae.

¶1 WIGGINS, J. — A public school teacher or other certificated employee discharged by a school district may obtain review by a hearing officer and appeal an adverse decision of the hearing officer to superior court. But the legislature did not give school districts the right to appeal an adverse hearing officer decision. When a hearing officer decided in favor of petitioner David Vinson and against respondent Federal Way School District, the school district sought review of the decision by statutory writ of certiorari. The superior court denied the writ, but the Court of Appeals reversed, finding sufficient cause to terminate Vinson.

¶2 We hold that the statutory writ, an extraordinary remedy, is not available to the school district. In contrast, the constitutional writ is always available to a party seeking relief from arbitrary, capricious, or illegal acts. The hearing officer acted within the limits of his statutory authority, and his final decision was not arbitrary or capricious. We reverse the Court of Appeals and reinstate the attorney fees awarded by the superior court.

## FACTS AND PROCEDURAL HISTORY

¶3 David Vinson taught school in the Federal Way School District (District) from 1988 until July 2007 without incident. By all accounts, Vinson was an inspiring and incredibly effective teacher.

¶4 In January 2005, Vinson filed a complaint with the District alleging sexual and malicious harassment against Thomas Jefferson High School Principal George Ilgenfritz and teacher Christopher Kraght. He alleged Ilgenfritz failed to support Vinson when a parent called him a "flaming faggot" during a school sports event in 2002. Vinson is

openly gay. After this alleged incident, Vinson claims Ilgenfritz targeted him for retaliation by forcing unnecessary classroom moves and undesirable teaching schedules. Vinson alleged Kraght, while speaking to students, repeatedly made antigay remarks targeting Vinson.

¶5 There had been previous complaints about Ilgenfritz filed by female teachers. In the course of investigating these complaints, Chuck Christensen, the District's executive director of human resources, confirmed Ilgenfritz used offensive language.[1] Christensen placed these investigation notes in Ilgenfritz's file in the District's human resources office but did not notify anyone of this unbecoming conduct.

¶6 Vinson's harassment complaint against Ilgenfritz and Kraght was assigned to District investigator Courtney Wood. Wood refused to interview identified student witnesses and ignored or failed to discover Christensen's earlier investigation notes. Wood also neglected to discover common knowledge among teachers that Ilgenfritz made sexist and homophobic remarks at staff meetings and did not take Vinson's allegations of homophobia seriously. Wood concluded neither Ilgenfritz nor Kraght had harassed Vinson. Vinson appealed that decision.[2]

¶7 On May 12, 2007, two days after filing his appeal, Vinson received a reprimand letter about "cheeking."[3] He had never received a verbal warning about this action. Vinson also received a reprimand letter for failing to follow a student individualized education plan (IEP). Later that summer, Wood investigated a complaint filed by teacher

---

[1] Christensen noted Ilgenfritz had referred to Vinson's sexual orientation in derogatory terms and that Ilgenfritz would not hire a lesbian teacher because ... he "already had enough of those at [Thomas Jefferson]." Hearing Officer Transcript (HOTR) at 74-75, 163-64, 180-81, 228-32, 255.

[2] Christensen served on the hearing board panel that heard Vinson's appeal. Although Christensen knew Ilgenfritz had referred to Vinson's sexual orientation in derogatory terms on at least one occasion and this information was not included in Wood's report, the appeals panel upheld Wood's conclusion that Ilgenfritz had not harassed Vinson.

[3] "Cheeking" is the pinching of a student's cheek.

Christopher Kraght alleging Vinson had harassed him through anonymous e-mails critical of Kraght's job performance. Wood's investigation of Kraght's complaint was far more thorough than Wood's earlier investigation of Vinson's complaint against Ilgenfritz and Kraght. Wood interviewed several students, including Rebecca Nistrian. Wood upheld Kraght's harassment complaint against Vinson. Vinson was instructed not to retaliate against any of the witnesses who participated in the investigation. As a result of these reprimands, Vinson was transferred from Thomas Jefferson High School to Federal Way High School.

¶8 Vinson continued to excel as a teacher at Federal Way; he was even featured in a *Seattle Times* article highlighting the success of the Washington Assessment of Student Learning (WASL) program Vinson had created. After school hours on May 1, 2007, Vinson encountered Rebecca Nistrian at a Taco Time restaurant. Nistrian was a former student who had previously called Vinson a "faggot" on at least one occasion. Hearing Officer Decision and Finding and Fact (HOFOF) at 4, ¶ 12. Nistrian initiated the exchange; the exact words exchanged are in dispute. Nistrian testified she said "hi," while Vinson claims that Nistrian asked, "[W]hy aren't you at [Thomas Jefferson]?", a reference to his having been transferred to Federal Way following the investigation for which Nistrian had been interviewed. Hearing Officer Transcript (HOTR) at 408. Nistrian's comment initiated a slew of vulgar words between the two.[4] The verbal exchange was mutual and brief, lasting less than 20 seconds.

¶9 Nistrian reported the Taco Time incident to the District's human resources director, Christensen, who again assigned the investigation to Wood. Nistrian claimed students accompanied Vinson at the Taco Time incident, but this allegation was never validated. Vinson was understandably concerned about Wood's perceived lack of impar-

---

[4] Nistrian also alleged Vinson threatened to come to her place of employment, The Red Lobster, and make things difficult for her. *HOTR*, at 15.

tiality. Vinson expressed this concern at the start of their interview on May 22, 2007, but Wood ignored him. Without first explaining what the complaint was about, Wood also mentioned the police might be involved, causing Vinson to panic. Both Nistrian and Vinson ultimately admitted to lying during the course of the investigation by Wood.[5] During the summer of 2007, as the investigation proceeded, Vinson continued to work at Federal Way High School—he was never placed on administrative leave.

¶10  On July 5, 2007, pursuant to RCW 28A.405.300, the District notified Vinson of probable cause for discharge. The notice was based on alleged harassment of and retaliation against a former student and dishonesty during the investigation of those allegations. Vinson appealed pursuant to RCW 28A.405.300, and a hearing was held on November 27 and 28, 2007. Hearing Officer John G. Cooper presided over the appeal.

¶11  Hearing Officer Cooper found that the District failed to establish sufficient cause to justify termination of Vinson's employment. Of the District's grounds for dismissal, Cooper found Vinson's lie to Wood the most troubling but reasoned that Vinson's behavior was understandable based on Vinson's reasonable belief that Wood would not conduct a fair and impartial investigation and that the investigation was not conducted fairly or impartially. Applying the eight-factor test from *Hoagland v. Mount Vernon School District No. 320*, 95 Wn.2d 424, 623 P.2d 1156 (1981), Cooper ruled that the District did not have sufficient cause to discharge Vinson.

¶12  The District sought review via writ of certiorari, RCW 7.16.040, in King County Superior Court. Judge Mary Yu denied the writ, affirming the hearing board officer's ruling and granting attorney fees for the administrative

---

[5] The hearing officer in this case entered a finding of fact that Nistrian is a "known liar" and he found her testimony "lacking in credibility." She had previously been suspended from school for forgery and lying or dishonesty. HOFOF at 4, ¶ 11.

hearing. *Fed. Way Sch. Dist. No. 210 v. Vinson*, No. 08-2--05374-1 (King County Super. Ct., Wash., May 15, 2008). The District filed an appeal. In the meantime, Vinson found employment with another school and gave notice that he was rescinding his application for reinstatement and waiving his right to recover attorney fees. Division One of the Court of Appeals dismissed the appeal as moot. *Fed. Way Sch. Dist. No. 210 v. Vinson*, 206 P.3d 1271 (2009).

¶13 The District then filed a motion for reconsideration on the ground that the parties had not settled. Rather, Vinson had unilaterally withdrawn his request and waived his right to attorney fees. The Court of Appeals granted the motion for reconsideration and withdrew its original opinion, holding that it had jurisdiction pursuant to RCW 7.16.350 and RAP 2.2(a)(1). *Fed. Way Sch. Dist. No. 210 v. Vinson*, 154 Wn. App. 220, 228 n.7, 225 P.3d 379 (2010). Two judges found there was sufficient cause for termination over a vigorous dissent.[6] The two-judge majority reversed the superior court's denial of the writ and vacated the order that affirmed the hearing officer and awarded attorney fees to Vinson. Vinson appealed to this court, and we granted review. *Fed. Way Sch. Dist. No. 210 v. Vinson*, 168 Wn.2d 1039, 233 P.3d 889 (2010).

¶14 The District submitted a motion to strike Vinson's answer to brief of amicus or for leave to file a supplemental brief. We granted leave to both parties to file supplemental briefs addressing the applicability of RCW 28A.405.340 and *City of Seattle v. Holifield*, 170 Wn.2d 230, 240 P.3d 1162 (2010).

## ANALYSIS

¶15 The extent of a superior court's authority to grant a writ of certiorari is a question of law. *Holifield*, 170

---

[6] The Court of Appeals held that "under the second *Clarke* test, lying during the course of an official investigation of professional misconduct lacks any professional purpose and is sufficient cause for termination as a matter of law." *Vinson*, 154 Wn. App. at 230 (citing *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 113-14, 720 P.2d 793 (1986)).

Wn.2d at 240 (citing *Commanda v. Cary*, 143 Wn.2d 651, 654, 23 P.3d 1086 (2001)). We review questions of law de novo. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 100 P.3d 791 (2004).

## I. Statutory Interpretation

¶16 Our fundamental objective in construing a statute is to ascertain and carry out the intent of the legislature. *State v. Alvarez*, 128 Wn.2d 1, 11, 904 P.2d 754 (1995). The intent of the legislature must be determined primarily from the language of the statute itself. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). We construe the meaning of a statute by reading it in its entirety, *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002), and considering the entire sequence of all statutes relating to the same subject matter, *In re Estates of Donnelly*, 81 Wn.2d 430, 435, 502 P.2d 1163 (1972).

## II. The District Has No Right of Appeal

¶17 School districts are municipal or quasi-municipal corporations. *Am. Fed'n of Teachers, Yakima Local 1485 v. Yakima Sch. Dist. No. 7*, 74 Wn.2d 865, 447 P.2d 593 (1968). They are creatures of statutes. As mere inventions of the legislature, they "can exercise *only* such powers as the legislature has granted in express words, or those necessary or fairly implied in, or incident to, powers expressly granted or those essential to the declared objects and purposes of such district." *Noe v. Edmonds Sch. Dist. No. 15*, 83 Wn.2d 97, 103, 515 P.2d 977 (1973) (emphasis added). Where a statute, which is the source of a municipal or quasi-municipal corporation's power, confers specific functions to a party, such functions may not be delegated to others. *Id.* "School districts are no exception to the rule." *Id.* Under Title 28A RCW the legislature has given district *employees*,

but not the district, the right to appeal a hearing officer's decision to superior court. RCW 28A.405.320.[7]

¶18 Prior to 1977, a teacher contesting the school district's action affecting the teacher's contractual right was entitled to a hearing before the school board. LAWS OF 1975-76, 2d Ex. Sess., ch. 114, § 5; RCW 28A.405.310 (formerly RCW 28A.58.455).[8] Judicial appeals from the school board's decision were available to the teacher, there being no reason to provide a right of judicial review by the board from its own decision. RCW 28A.405.320 (formerly RCW 28A.58.460).

¶19 In 1977, the legislature replaced the school board with an independent hearing officer as the tribunal to review the validity of the school district's action affecting the teacher's contract. LAWS OF 1977, 1st Ex. Sess., ch. 7. The legislature could have changed, but chose not to change, RCW 28A.405.320 to give the district the right to appeal an adverse hearing officer decision.[9] Under Title 28A RCW the legislature has given district employees *exclusive* power to appeal a hearing board officer's decision while simultane-

---

[7] RCW 28A.405.320 states:

Any teacher, principal, supervisor, superintendent, or other certificated employee, desiring to appeal from any action or failure to act upon the part of a school board relating to the discharge or other action adversely affecting his or her contract status, or failure to renew that employee's contract for the next ensuing term, within thirty days after his or her receipt of such decision or order, may serve upon the chair of the school board and file with the clerk of the superior court in the county in which the school district is located a notice of appeal which shall set forth also in a clear and concise manner the errors complained of.

[8] This statute was recodified by Laws of 1990, ch. 33 § 4. For consistency, we use the current code numbers. Older case law usually refers to the former code section numbers.

[9] The legislature knows how to give review to a school board as it has explicitly done so: "Either party to the proceedings in the superior court may seek appellate review of the decision as any other civil action." RCW 28A.405.360. This situation would arise if a district employee appealed a hearing officer's decision and prevailed in superior court. Appeal from the superior court's decision would then be available to both the school district and district employee.

ously declining to authorize a school district to do so.[10] RCW 28A.405.320. Unquestionably, the legislature intended that school districts would not have the right to seek review in superior court in cases of this type.

## III. The Statutory Writ of Certiorari Is Not Available to the District

¶20 There are two classes of writs: (1) the constitutional common law writ and (2) the statutory writ. *Commanda*, 143 Wn.2d at 654-55. The District here sought review pursuant to RCW 7.16.040,[11] the statutory writ.

¶21 The District argues for a broad scope of review under the statutory writ, relying on *Kelso School District No. 453 v. Howell*, 27 Wn. App. 698, 621 P.2d 162 (1980). The *Howell* court recognized that review under the statutory writ must be more limited than under chapter 28A.405 RCW,[12] but expansively defined review under the writ to include violation of constitutional principles, exceeding statutory jurisdiction, clear error of law, or arbitrary and capricious decision-making. *Id*. at 701. Indeed, the only difference between the statutory writ and review under chapter 28A.405 RCW identified in *Howell* is that the latter included review of findings under the clearly erroneous test. *Id*. at 701-02.

¶22 Court of Appeals Judge Dwyer, dissenting in this case, criticized the two-judge majority for following the

---

[10] Courts cannot "read into a statute anything which [it] may conceive [that] the legislature [has] unintentionally left out." *Seattle Ass'n of Credit Men v. Gen. Motors Acceptance Corp.*, 188 Wash. 635, 639, 63 P.2d 359 (1936).

[11] RCW 7.16.040 states:

A writ of review shall be granted by any court, except a municipal or district court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

[12] Chapter 28A.405 RCW, formerly chapter 28A.58 RCW, was recodified by Laws of 1990, ch. 33, § 4. For consistency, we use the current code numbers. Older case law usually refers to the former code section numbers.

principles of *Howell*, which he characterized as an "affront" to the legislature's decision to deny the District the right of appeal from the hearing officer decision. *Vinson*, 154 Wn. App. at 236-37 (Dwyer, A.C.J., dissenting). We agree with Judge Dwyer that the broad view adopted in *Howell* conflicts with the legislature's decision to give teachers but not school districts the right to appeal.

¶23 The disagreement between the Court of Appeals majority and dissent highlights the basic conundrum in this case—how to reconcile the legislature's grant of review by statutory writ, RCW 7.16.040, with the legislature's denial of review to an administrative agency, the school district, in RCW 28A.405.320. We read these two statutes together and must give meaning to both. The legislature has created a procedure and given only one party a right to appeal; allowing the District to seek review via statutory writ, which under *Kelso* is nearly identical to an appeal, undermines this legislative intent.[13] A writ of certiorari is clearly not meant to be a substitute for an appeal and cannot be used to circumvent the legislature's clear directive; thus, the statutory writ is not available to the District.

¶24 A constitutional right to judicial review still exists notwithstanding the district's inability to appeal. CONST. art. IV, § 6; *Williams v. Seattle Sch. Dist. No. 1*, 97 Wn.2d 215, 643 P.2d 426 (1982). The District did not specifically request review under this court's constitutional authority; however, the pleadings were sufficient to raise the issue of our inherent power to review. CONST. art. IV, § 4; *see also Bridle Trails Cmty. Club v. City of Bellevue*, 45 Wn. App. 248, 254, 724 P.2d 1110 (1986).

---

[13] "Since the legislature saw fit . . . to withhold from the department any right to appeal from the decisions of the board, it follows that, in the absence of some legislative expression indicating a contrary intention, the superior court had no jurisdiction to entertain and grant an application for certiorari which would, in effect, permit the department to do precisely what the legislature has said it may not do, to wit, obtain a review of the board's decision by the superior court." *State ex rel. Bates v. Bd. of Indus. Ins. Appeals*, 51 Wn.2d 125, 131-32, 316 P.2d 467 (1957).

¶25 The Washington State Constitution recognizes the right to seek discretionary review of an administrative agency decision under the court's inherent constitutional power (also known as constitutional or common law certiorari). CONST. art. IV, §§ 4, 6. "The scope of review is limited to whether the hearing officer's actions were arbitrary, capricious, or illegal, thus violating a claimant's fundamental right to be free from such action." *Foster v. King County*, 83 Wn. App. 339, 346, 921 P.2d 552 (1996); *Bridle Trails*, 45 Wn. App. at 252; *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 693-94, 658 P.2d 648 (1983) (constitutional certiorari is limited to a review of the record to determine whether the challenged decision or act was arbitrary and capricious or contrary to law). "The fundamental purpose of the constitutional writ of certiorari is to enable a court of review to determine whether the proceedings below were within the lower tribunal's jurisdiction and authority." *Saldin Secs., Inc. v. Snohomish County*, 134 Wn.2d 288, 292, 949 P.2d 370 (1998). Thus, a court will accept review only if the appellant can allege facts that, if verified, would establish that the lower tribunal's decision was illegal or arbitrary and capricious. *Pierce County Sheriff*, 98 Wn.2d at 693-94.

¶26 "The scope of court review should be very narrow, . . . and one who seeks to demonstrate that action is arbitrary or capricious must carry a heavy burden." *Id.* at 695. Arbitrary and capricious action is " 'willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.' "[14] *Foster*, 83 Wn. App. at 347 (quoting *Kerr-Belmark Constr. Co. v. City Council*, 36 Wn. App. 370, 373, 647 P.2d 684 (1984)). Hearing Officer Cooper conducted a two-day hear-

---

[14] "Agency action is arbitrary and capricious if there is no support in the record for the action. An agency action is not arbitrary and capricious when there is room for two opinions, despite a belief on the part of the reviewing court that the agency reached an erroneous conclusion." Tim J. Filer, *The Scope of Judicial Review of Agency Actions in Washington Revisited - Doctrine, Analysis, and Proposed Revisions*, 60 WASH. L. REV. 653, 660 (1985) (footnote omitted).

ing. In a 16-page opinion, he found the District failed to establish sufficient cause to justify termination of Vinson's employment. His detailed findings of fact and conclusions of law demonstrate that he considered the relevant facts and legal authority. His written decision shows careful deliberation and cannot be said to be arbitrary and capricious. We next examine whether the hearing officer's decision was so clearly illegal as to call for revision by constitutional writ.

¶27  " '[I]llegality' is a 'nebulous term.' " *Wash. Pub. Emps. Ass'n v. Wash. Pers. Res. Bd.*, 91 Wn. App. 640, 652, 959 P.2d 143 (1998) (quoting *King County v. Wash. State Bd. of Tax Appeals*, 28 Wn. App. 230, 242, 622 P.2d 898 (1981)). In the constitutional certiorari context, illegality refers to an agency's jurisdiction and authority to perform an act. *Id.*; *Saldin*, 134 Wn.2d at 292. "[A]n alleged error of law is insufficient to invoke the court's constitutional power of review." *Wash. Pub. Emps. Ass'n*, 91 Wn. App. at 658. The District claims the hearing officer committed clear error of law by applying the *Hoagland* factors, and this error cannot be corrected by any other means. The District's claim does not satisfy any of the requirements necessary for grant of a constitutional writ. The hearing officer's powers and authority are outlined in RCW 28A.405.310. RCW 28A.405-.310 grants a hearing officer jurisdiction to decide appeals from a school district's determination of probable cause to discharge. Because the hearing officer was within his statutory authority to issue a decision under RCW 28A.405-.310, his actions were not illegal. Accordingly, we deny the request for a constitutional writ.

¶28  It was error for the Court of Appeals to address the law of sufficient cause since an alleged error of law is not adequate grounds to invoke the court's constitutional power of review. But even if the District had a right to statutory writ of certiorari pursuant to RCW 7.16.040, which allows for review of clear errors of law, we would still reverse because the Court of Appeals has erroneously removed the

required nexus between alleged teacher misconduct or deficiency and teacher performance.

## IV. Sufficient Cause Requires Nexus Between Misconduct and Teaching Effectiveness

¶29 The employment contract of a nonprovisional teacher may not be terminated except for "sufficient cause." RCW 28A.400.300(1). Sufficient cause is *not* defined by statute; thus, our courts have construed the phrase to give it meaning.

¶30 This court in *Hoagland* interpreted sufficient cause to mean "a showing of conduct which *materially and substantially* affects the teacher's performance." *Hoagland*, 95 Wn.2d at 428 (emphasis added). "[I]t would violate due process to discharge a teacher without [a] showing [of] actual impairment to performance." *Id.* at 429. We noted that "because the statutes do not stipulate certain conduct as per se grounds for dismissal, it will be a question of fact whether the complained of acts constitute sufficient cause." *Id.* at 428. We listed eight factors that should be considered prior to dismissal of a teacher,[15] noting that they are relevant to any determination of teacher effectiveness, "the touchstone for all dismissals." *Id.* at 430. These factors were designed to ensure that if a teacher's conduct outside the profession is the basis for dismissal, the conduct has some nexus to performance of duties as a teacher. *Id.* at 428. We have, however, observed that, "in some instances, teacher misconduct can be so egregious that the sufficient cause determination can be made as a matter of law." *Mott v.*

---

[15] The eight factors are:

(1) the age and maturity of the students; (2) the likelihood the teacher's conduct will have adversely affected students or other teachers; (3) the degree of the anticipated adversity; (4) the proximity or remoteness in time of the conduct; (5) the extenuating or aggravating circumstances surrounding the conduct; (6) the likelihood that the conduct may be repeated; (7) the motives underlying the conduct; and (8) whether the conduct will have a chilling effect on the rights of the teachers involved or of other teachers.

*Hoagland*, 95 Wn.2d at 429-30.

*Endicott Sch. Dist. No. 308*, 105 Wn.2d 199, 203, 713 P.2d 98 (1986).

¶31 Our decision in *Clarke* harmonizes these two concerns: "[s]ufficient cause for a teacher's discharge exists as a matter of law where the teacher's deficiency is unremediable [sic] *and* (1) materially and substantially affects the teacher's performance, *Hoagland*, [95 Wn.2d at 428], *Mott*, [105 Wn.2d at 203]; *or* (2) lacks any positive educational aspect or legitimate professional purpose. *Pryse* [*v. Yakima Sch. Dist. No. 7*], 30 Wn. App. [16,] 24, 632 P.2d 60 [(1981)]; *Potter* [*v. Kalama Pub. Sch. Dist. No. 402*], 31 Wn. App. [838], 842, 644 P.2d 1229 [(1982)]." *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 113-14, 720 P.2d 793 (1986) (first emphasis added). We consider the *Hoagland* factors to determine whether a teacher's conduct substantially undermines a teacher's effectiveness. We also noted in *Clarke* that "[f]irst, not all eight [*Hoagland*] factors will be applicable in every teacher discharge case. Second, these factors are not necessarily applicable when the cause for dismissal is the teacher's improper performance of his duties. . . . Nevertheless, these factors are helpful in determining whether a teacher's effectiveness is impaired by his classroom deficiencies."[16] *Id.* at 114 (internal citations omitted).

¶32 The Court of Appeals first deviated from our stated rule in *Clarke* in *Sauter v. Mount Vernon School District No. 320*, 58 Wn. App. 121, 791 P.2d 549 (1990). Relying on *Pryse* and *Potter*,[17] the *Sauter* court eliminated the remediability prong of the second *Clarke* test. *Sauter*, 58 Wn. App. at

[16] The *Hoagland* factors were applied in *Clarke*, which involved a teacher discharge for his *on-site* job performance. *Clarke*, 106 Wn.2d at 103-04.

[17] *Pryse* and *Potter* can be distinguished. Both are "egregious" teacher discharge cases. *Pryse*, 30 Wn. App. 16 (teacher was discharged for making sexually explicit remarks to and having improper contact with female students); *Potter*, 31 Wn. App. 838 (teacher was discharged for inappropriate physical interactions occurring during class time with female students). Sexually exploitive conduct "is inherently harmful to the student-teacher relationship and impacts the teacher's efficiency." *Pryse*, 30 Wn. App. at 24.

130-31. The *Sauter* test—sufficient cause for a teacher's discharge exists as a matter of law where the teacher's deficiency is (1) irremediable and materially and substantially affects the teacher's performance *or* (2) lacks any positive educational aspect or legitimate professional purpose—eradicated the significant protections previously afforded teachers by the sufficient cause standard.[18] Under the *Sauter* test, any misconduct will be grounds for discharge because, by definition, misconduct is behavior that "lacks any positive educational aspect or legitimate professional purpose." *Id.* at 130.

¶33 The ramifications of the modified-*Clarke* rule are glaringly apparent in *Vinson*. The *Clarke* rule as modified by *Vinson* holds that anytime a teacher, in the course of his job, engages in conduct lacking any "professional purpose," that teacher may be discharged. *Vinson*, 154 Wn. App. at 230. This creates a per se rule of discharge under which any school-day lapse, no matter how minor and no matter the context, will always constitute sufficient cause for the teacher's discharge. Essentially, the *Vinson* court, relying on *Sauter*, removes the required nexus between alleged teacher misconduct or deficiency and teaching performance. We reject this alteration of our *Clarke* rule. The nexus requirement finds root in the constitution. *See, e.g., Hoagland*, 95 Wn.2d at 429 ("[I]t would violate due process to discharge a teacher without showing actual impairment to performance.").

¶34 Sufficient cause may be found as a matter of law, without applying the *Clarke* test or *Hoagland* factors, in only the most egregious cases. We hold that where a teacher engages in sexually exploitive conduct or physical abuse of a student, sufficient cause is established as a matter of law; the *Clarke* test and *Hoagland* factors (if applicable, *see*

---

[18] Four Court of Appeals decisions have followed *Sauter*'s modified-*Clarke* rule: *Wright v. Mead Sch. Dist., No. 354*, 87 Wn. App. 624, 944 P.2d 1 (1997); *Ruchert v. Freeman Sch. Dist.*, 106 Wn. App. 203, 22 P.3d 841 (2001); *Weems v. North Franklin Sch. Dist.*, 109 Wn. App. 767, 37 P.3d 354 (2002); and *Federal Way Sch. Dist. v. Vinson*, 154 Wn. App. 220, 225 P.3d 379 (2010).

*Clarke*, 106 Wn.2d at 114) must be applied in all nonflagrant instances of misconduct.

V. Attorney Fees

█ ¶35 If a district employee prevails at the hearing officer level, RCW 28A.405.310(7)(c) provides for "reasonable attorneys' fees." We reinstate the previous attorney fee awarded by the superior court.

█ ¶36 The District sought a writ of certiorari under RCW 7.16.040, which does not provide for attorney fees. The District raised arguments only cognizable in an appeal under RCW 28A.405.320-.350, which does provide for attorney fees but does not permit the District to appeal. This would be an appropriate case to award fees to Vinson, but the legislature has not granted a right to attorney fees under the constitutional writ. Therefore, Vinson is entitled only to attorney fees incurred at the hearing officer level, as authorized by RCW 28A.405.310(7)(c).

## CONCLUSION

¶37 We reverse the Court of Appeals and reinstate the superior court decision, which included an award of attorney fees for the underlying proceedings before the hearing officer. We hold that a statutory writ of certiorari pursuant to RCW 7.16.040 is not available to the District, overruling *Kelso School District No. 453 v. Howell*, 27 Wn. App. 698, 621 P.2d 162 (1980) to the extent it conflicts with our decision. We further hold that the original *Clarke* test and the applicable *Hoagland* factors must be applied in all nonflagrant cases to determine whether sufficient cause exists to discharge a teacher. Only in cases where there is egregious conduct, e.g., sexually exploitive conduct or physical abuse of a student, may sufficient cause be found as a

matter of law without applying the original *Clarke* test and *Hoagland* factors.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, and STEPHENS, JJ., concur.

¶38 J.M. JOHNSON, J. (dissenting) — The paramount duty of the State is to make ample provision for the education of all children. WASH. CONST. art. IX, § 1. The implementation of this duty falls to local school districts, which must protect students as well as provide for their education. Consequently, school districts must take action when teachers mistreat students or otherwise fail in their duties.[19] Such action may include discharge from employment.

¶39 Mr. David Vinson, a former teacher in the Federal Way School District (District), mistreated a student and failed to meet his duties as a teacher. He called a former student profane and derogatory names in a public place, specifically a restaurant frequented by other students. He then lied about the incident and related matters during the course of the official District investigation. Beyond this, Mr. Vinson has three previous cases of misconduct and has already been disciplined by the District for the malicious harassment of a staff member. Today, this court's majority makes it more difficult to discharge teachers and certificated employees than the legislature intended, even where clear cause for discharge exists. While I must acknowledge Mr. Vinson's long history as a teacher, this does not excuse Mr. Vinson's misconduct or lying about it during an official investigation. Nor does it justify the majority's decision to refuse the District a hearing to appeal the hearing officer's decision to allow Mr. Vinson to return to the classroom. The

---

[19] Teachers have the duty "to endeavor to impress on the minds of their pupils the principles of morality, truth, justice, temperance, humanity and patriotism [and] to teach them to avoid . . . profanity and falsehood . . . ." RCW 28A.405.030. This has been a constant in our educational system since territorial days. CODE OF 1881, § 3203.

hearing officer's decision that Mr. Vinson's misconduct was not sufficient cause to discharge him was clear error of law and should be reviewable in the courts. Because teachers must be held to a higher standard than the hearing examiner or majority allows, I respectfully dissent.

FACTS

¶40 This case contains relatively few facts necessary to the legal analysis of whether the District has cause to discharge Mr. Vinson and whether the District may appeal the hearing officer's decision to the contrary. On May 1, 2007, Mr. Vinson encountered a former student at a Taco Time restaurant in Federal Way. Mr. Vinson publicly called this student profane and derogatory names at the restaurant, which was frequented by other students. The District investigated the incident.[20] Mr. Vinson lied about the incident and related matters during the course of the investigation. Mr. Vinson also sent a "harassing e[-]mail"[21] to one of the employees who participated in the investigation.

¶41 The District notified Mr. Vinson that it had probable cause for his discharge pursuant to RCW 28A.405.300. The District stated that the grounds described above "separately and collectively constitute[ ] sufficient cause for your discharge from District employment."[22] The letter also highlighted three letters of reprimand Mr. Vinson had received for three prior incidents of misconduct: (1) A letter of reprimand for "inappropriate cheeking of students"[23] in

---

[20] The investigation was conducted by the same District investigator who had conducted an investigation of a 2005 claim against Mr. Vinson for malicious harassment, and who had dismissed a claim by Mr. Vinson of sexual harassment by staff at Thomas Jefferson High School. The staff have been disciplined by the District for other instances of misconduct. *See* Hr'g Officer's Certification of R., Ex. D. The student Mr. Vinson encountered at Taco Time was involved in the 2005 investigation.

[21] Clerk's Papers at 27.

[22] *Id.*

[23] *Id.* "Cheeking" is the pinching of a student's cheek.

2005; (2) a letter of reprimand for failure to provide legally required accommodations for a child with a disability in 2005, and for insubordination;[24] and (3) a letter of reprimand for "malicious harassment" of another staff member at Thomas Jefferson High School, for which he was removed from a coaching position and involuntarily transferred to Federal Way High School in 2005. *Id.*

## PROCEDURAL HISTORY

¶42 Mr. Vinson requested a hearing to contest the District's grounds for termination. After a closed hearing, the hearing officer concluded the District did not have sufficient cause to justify termination of Mr. Vinson's employment. The hearing officer excused Mr. Vinson's lying during the course of the investigation because Vinson "suggested plausible reasons for his failure to cooperate, based largely on his feelings that he could not and would not receive a fair and impartial investigation by [the District]." Hr'g Officer Decision and Finding of Fact at 5, ¶ 21.

¶43 The hearing officer also dismissed the gravity of Mr. Vinson's use of profane and derogatory names directed at a former student in a local restaurant. The hearing officer reasoned that the targeted individual was no longer a student and noted that she had disparaged Mr. Vinson when she was a student. Purporting to apply the *Clarke*[25] and *Hoagland*[26] tests, the hearing officer determined that there were extenuating circumstances that excused Mr. Vinson's conduct and found no nexus between his conduct and his performance as teacher sufficient to give the District cause to terminate Mr. Vinson. *Id.* at 13, 16.

¶44 The District sought review in King County Superior Court via RCW 7.16.040, the statutory writ of certiorari.

---

[24] *See id.*

[25] *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 113-14, 720 P.2d 793 (1986).

[26] *Hoagland v. Mount Vernon Sch. Dist. No. 320*, 95 Wn.2d 424, 623 P.2d 1156 (1981).

The writ was denied. *Fed. Way Sch. Dist. No. 210 v. Vinson,* No. 08-2-05374-1 (King County Super. Ct., Wash. May 15, 2008). The District appealed. The Court of Appeals initially dismissed the appeal as moot, as Mr. Vinson had found employment at a different school, no longer sought reinstatement at Federal Way High School, and had waived his right to recover attorney fees. Resp't's Mot. to Dismiss as Moot at 2.

¶45 Shortly after the Court of Appeals dismissed the appeal as moot, however, Mr. Vinson served the District with a claim for damages alleging wrongful discharge and violation of chapter 49.60 RCW.[27] The District then filed for reconsideration of the Court of Appeals' decision dismissing the appeal as moot, which was granted. *Fed. Way Sch. Dist. No. 210 v. Vinson,* 154 Wn. App. 220, 225 P.3d 379 (2010). The Court of Appeals held that the trial court had abused its discretion in refusing to grant the statutory writ of certiorari and held that there was sufficient cause to discharge Mr. Vinson. *Id.* at 234. Mr. Vinson appealed to this court. We granted review. *Fed. Way Sch. Dist. No. 210 v. Vinson,* 168 Wn.2d 1039, 233 P.3d 889 (2010).

## ANALYSIS

¶46 The majority's holding is legally incorrect. A school district has (and must have) an appeal from a hearing officer's decision reversing discharge for cause. Additionally, the statutory writ of certiorari in RCW 7.16.040 is not equivalent to the appeal granted to teachers in RCW 28A.405.320-.350. Thus, it is unnecessary to hold that the statutory writ is not available to the District in order to reconcile RCW 7.16.040 with RCW 28A.405.320. The majority makes it more difficult to discharge certificated school employees than the legislature intended, allowing hearing officers, rather than school officials, to decide when cause for discharge exists.

---

[27] Resp't's Answer to Appellant's Mot. for Recons. at 2; Appellant's Mot. for Recons. at 2.

¶47 School districts are subject to the "general laws" codified in the Revised Code of Washington because they are undoubtedly "municipal corporations or quasi-municipal corporations." *Am. Fed'n of Teachers, Yakima Local 1485 v. Yakima Sch. Dist. No. 7*, 74 Wn.2d 865, 868, 447 P.2d 593 (1968); *see also* WASH. CONST. art. XI, § 10 ("Corporations for municipal purposes . . . shall be subject to and controlled by general laws."). Statutes relating to the same subject "are to be read together as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes." *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974). Here, RCW 28A.405.320-.350 and RCW 7.16.040 relate to the same subject: the right of parties to appeal a hearing officer's decision. As such, they must be read together.

¶48 RCW 28A.405.320 expressly provides certificated employees an appeal from a hearing officer's decision as a matter of right. It does not expressly prohibit a school district's appeal. This is evident from the plain language of the statute.[28] Contrary to the majority's conclusion, this does not mean that a school district cannot seek review via the long preexisting statutory writ of certiorari. RCW 7.16.040 states:

A writ of review shall be granted by any court, except a municipal or district court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no

---

[28] RCW 28A.405.320 provides:

Any teacher, principal, supervisor, superintendent, or other certificated employee, desiring to appeal from any action or failure to act upon the part of a school board relating to the discharge or other action adversely affecting his or her contract status, or failure to renew that employee's contract for the next ensuing term, within thirty days after his or her receipt of such decision or order, may serve upon the chair of the school board and file with the clerk of the superior court in the county in which the school district is located a notice of appeal which shall set forth also in a clear and concise manner the errors complained of.

appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

¶49 The majority concludes that the statutory writ of certiorari is unavailable to the District because the statutory writ allows for review of only clear errors of law. Majority at 770-71. According to the majority, this makes the statutory writ equivalent to an appeal as a matter of right, which it says school districts do not have under RCW 28A.405.320. Because the majority finds these two legislatively granted mechanisms of appeal to be equivalent, it holds that the District is entitled to neither. In other words, if the legislature did not intend to give school districts the right to appeal under RCW 28.405.320, the legislature could not have intended school districts to have an appeal using the long-standing statutory writ of certiorari.

¶50 The majority's logic rests on a false premise. As we recently affirmed in *City of Seattle v. Holifield*, 170 Wn.2d 230, 240 P.3d 1162 (2010), the statutory writ of certiorari does not issue "only to correct mere errors of law." *Id.* at 245. In order to invoke the statutory writ, therefore, the District must show something more than error of law by the hearing officer. Here, the District has shown far more than an error of law by the hearing officer and is entitled to the statutory writ of certiorari. The hearing examiner "acted illegally." *Id.* at 241.

¶51 We review a superior court's decision to grant a writ of review de novo. *Commanda v. Cary*, 143 Wn.2d 651, 654, 23 P.3d 1086 (2001). The statutory writ of review shall issue when an inferior tribunal has "(1) exceeded its authority *or* acted illegally and (2) no appeal nor any plain, speedy, and adequate remedy at law exists." *Holifield*, 170 Wn.2d at 240. Here, the second prong is satisfied because RCW 28A.405-.320 does not expressly provide the District with a right to appeal. The question is whether the hearing officer "acted illegally" under the first prong.

¶52 An inferior tribunal, board, or officer exercising judicial functions acts illegally when that tribunal, board,

or officer "(1) has committed an obvious error that would render further proceedings useless; (2) has committed probable error and the decision substantially alters the status quo or substantially limits the freedom of a party to act; or (3) has so far departed from the accepted and usual course of judicial proceedings as to call for the exercise of revisory jurisdiction by an appellate court." *Holifield*, 170 Wn.2d at 244-45. *Holifield* did not restrict this definition to review interlocutory decisions. *See id.* at 245 (deriving formula from RAP 13.5(b) *and* RAP 2.3(b)).

¶53 The second condition is clearly applicable here. The hearing officer committed error by excusing Mr. Vinson's inexcusable conduct in a public place and later lying during the official investigation. In *Clarke*, we held that sufficient cause for a teacher's discharge exists as a matter of law where the teacher's deficiency is "[ir]remediable *and* (1) materially and substantially affects the teacher's performance *or* (2) lacks any positive educational aspect or legitimate professional purpose." *Clarke v. Shoreline Sch. Dist. No. 412*, 106 Wn.2d 102, 113-14, 720 P.2d 793 (1986) (emphasis added) (citations omitted). The *Hoagland* test provides guidelines to assess whether the deficiency materially and substantially affects the teacher's performance.[29]

¶54 Mr. Vinson's conduct, however, is not a "teaching deficiency" that can be remedied. It is unacceptable behavior that lacks any positive educational aspect or legitimate professional purpose. *Clarke*, 106 Wn.2d at 113-14; *see also Mott v. Endicott Sch. Dist. No. 308*, 105 Wn.2d 199, 713 P.2d 98 (1986). In a case like this, the *Clarke* test is satisfied without consideration of whether Mr. Vinson's conduct

---

[29] These guidelines are "(1) the age and maturity of the students; (2) the likelihood the teacher's conduct will have adversely affected students or other teachers; (3) the degree of the anticipated adversity; (4) the proximity or remoteness in time of the conduct; (5) the extenuating or aggravating circumstances surrounding the conduct; (6) the likelihood that the conduct may be repeated; (7) the motives underlying the conduct; and (8) whether the conduct will have a chilling effect on the rights of the teachers involved or of other teachers." *Hoagland*, 95 Wn.2d at 429-30.

materially and substantially affects his performance. It is only necessary to look to the nature of the conduct and determine whether it was acceptable for a teacher in the context in which it was performed.[30]

¶55 The hearing officer committed probable error by excusing Mr. Vinson's inexcusable conduct and concluding the District did not have sufficient cause to discharge Mr. Vinson. Additionally, not being able to discharge a teacher for cause substantially alters the status quo (if it does not, then the state of our educational system is sad indeed). The second factor of the *Holifield* test applies. The trial court should have granted the District's petition for review via the statutory writ of certiorari.[31] The Court of Appeals' decision should be affirmed.

CONCLUSION

¶56 The District has cause to discharge Mr. Vinson. Mr. Vinson called a former student profane and derogatory names in a public restaurant frequented by students near the school. He then lied about the incident during the course of an official school district investigation. The majority's decision to refuse the District an appeal in this case is legally incorrect and flatly inconsistent with the duty our constitution imposes on the school districts of our state to remove teachers who mistreat students and fail to meet their duties. I dissent.

---

[30] Even so, it is difficult to believe that Mr. Vinson's conduct has *not* materially and substantially affected Mr. Vinson's performance as a teacher, given the public nature of his rant at a former student and the protracted nature of this dispute, in part because of Vinson's falsehoods. *See Hoagland*, 95 Wn.2d at 428.

[31] I agree with the majority's conclusion that the constitutional writ of certiorari is also available to the District but question whether the scope of review is necessarily limited to whether the hearing officer's actions were "arbitrary, capricious, or illegal" in a case involving article IX of our state constitution.